Sam TUCKER, Administrator of the Estate of Robert L. Tucker, Plaintiff-Appellant,

v.

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Tennessee; Metropolitan Board of Hospitals; Metropolitan Nashville General Hospital; Vanderbilt Hospital, and D.R. Doyle, M.D., Defendants-Appellees,

and

Duke A. Shackleford, and Clarksville Volkswagen, Inc., Defendants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Nov. 7, 1984.

Application for permission to Appeal Denied by Supreme Court Feb. 25, 1985.

Ben W. Hooper, II, Newport, for plaintiff-appellant.

William F. Howard, Nashville, for defendants-appellees, Metropolitan Government and Metropolitan Board of Hospitals.

H. Lee Barfield, II, Nashville, for defendants-appellees, Vanderbilt Hospital and D.R. Doyle, M.D.

## OPINION

LEWIS, Judge.

Plaintiff Sam Tucker, Administrator of the Estate of Robert L. Tucker, filed his complaint against defendants, Metropolitan Government of Nashville and Davidson

County (Metro), Metropolitan Nashville General Hospital (General), Vanderbilt Hospital (Vanderbilt), and D.R. Doyle, M.D.[1]

The complaint alleged that Metro, General, Vanderbilt, and Dr. Doyle were jointly negligent in that their actions jointly fell below the professional standard of care and skill required and expected of them in rendering medical treatment and services to Robert L. Tucker and their alleged acts of negligence were a direct and proximate cause of the injuries and wrongful death of Robert L. Tucker.

Metro and General filed their motions for summary judgment on grounds which included that they were governmental entities and that the required statutory notice was not given to them.

Vanderbilt and Dr. Doyle filed their answer and, also, motions for summary judgment.

Subsequent to a hearing, the Trial Court granted each defendant's motion for summary judgment.

The facts out of which this case arose are as follows:

On August 4, 1978, Robert L. Tucker, a thirty-seven-year-old male was found by the Metropolitan Police on a street in downtown Nashville in a catatonic state. The police took him to the emergency room at General at approximately 6:40 P.M. Dr. Doyle, the physician on duty, and other medical personnel in the emergency room at General performed a physical and neurological examination of Mr. Tucker. They determined that his vital signs were stable, that he was in good physical condition, that he did not have any significant heart and lung disease, or abdominal disease, and that he had not suffered from any obvious traumas. Other than the movement of his eyes, Mr. Tucker made no response during the examination either to the questions of medical personnel or to manipulations of his body.

Medical personnel, according to the complaint,

as part of their treatment procedure, contacted the plaintiff, father of the deceased, at which time the plaintiff fully advised of all medical and mental problems of his son, as well as what could be expected in the way of unusual behavior. Plaintiff also advised that the Veterans' Administration Hospital at Murfreesboro, Tennessee, had medical records concerning the deceased.

Dr. Doyle and General deny that any specific information concerning Mr. Tucker's past mental problems was given by the plaintiff.

Based upon the examinations given by the medical personnel at General, Dr. Doyle determined that Mr. Tucker probably had a psychological disease, rather than physical illness, and placed him on a stretcher in the center of the rectangular single-room emergency room for observation by herself and other medical personnel. For several hours, Dr. Doyle and other medical personnel in the emergency room did not observe any movement, resistance, or any aggressive conduct by Mr. Tucker. Mr. Tucker was in a catatonic state and was not restrained.

Dr. Doyle contacted the Veterans Administration Hospital in Nashville and arranged to transfer Mr. Tucker from the emergency room to the Nashville VA Hospital for psychiatric evaluation.

After arranging that transfer, Dr. Doyle resumed her normal responsibilities of treating other patients and supervising the medical personnel in the emergency room. At approximately 11:00 P.M., with Dr. Doyle standing only a few feet behind Mr. Tucker's stretcher, Mr. Tucker, suddenly and without any notice, bolted upright on his stretcher and ran out of the emergency room. Security guards and medical personnel pursued Mr. Tucker but were unable to apprehend him. The Metropolitan Police

---

1. Also named as defendants were Duke A. Shackleford and Clarksville Volkswagen, Inc. However, all claims as to these two defendants were settled and an order of dismissal entered as to them.

Department was notified of the incident and advised to return Mr. Tucker to the Nashville VA Hospital or to General if they found him.

At approximately 12:30 A.M., on August 5th, Mr. Tucker was brought back to General's emergency room after having been struck by a motor vehicle. Dr. Doyle pronounced Mr. Tucker dead on arrival at the emergency room.

The complaint alleges that a vehicle driven by Duke Shackleford and owned by Clarksville Volkswagen struck Mr. Tucker.

We first discuss plaintiff's issue regarding the motion for summary judgment granted in favor of Metro and General.

Metro and General moved for summary judgment

> in their favor upon the ground that there is no genuine issue as to any material fact and defendants are entitled to a judgment as a matter of law in that:
>
> . . . .
>
> Plaintiff has failed to state a claim upon which relief can be granted because these defendants are governmental entities as defined in T.C.A. Section 23–3302(1) and, as such, are immune from all claims stated by Plaintiff because Plaintiff:
>
> > a. Failed to give the statutory notice required by T.C.A. Sections 23–3313, 23–3314 and 23–3315, . . . ."

Attached to the motion for summary judgment was the affidavit of John M. Stone, Director of Hospitals, which is as follows:

> John M. Stone, after being first duly sworn, does state as follows:
>
> 1. Prior to and on August 4 and 5, 1978, he was the Director of Hospitals. He is presently the Director of Hospitals. He was appointed to this position by the Metropolitan Board of Hospitals, a Board of the Metropolitan Government of Nashville and Davidson County, a governmental, municipal and public corporation created and existing by virtue of an[d] under the Constitution and laws of the State of Tennessee.
>
> 2. As Director of Hospitals, he is the chief administrative officer of the Metropolitan Board of Hospitals.
>
> 3. Under his jurisdiction are Metropolitan Nashville General Hospital and Nashville Metropolitan Bordeaux Hospital.
>
> 4. Neither on August 4 or 5, 1978, nor at any other time subsequent to those dates, did The Metropolitan Government of Nashville and Davidson County, the Metropolitan Board of Hospitals, he or Metropolitan Nashville General Hospital, have, provide and/or maintain professional liability insurance coverage for the negligence, carelessness and/or malpractice of the employees, agents and/or servants of Metropolitan Nashville General Hospital committed during the course of their said employment except for the personnel in the anesthesia department.
>
> 5. He has never received the notice required by the Tennessee Governmental Tort Liability Act, set forth in Title 23, Chapter 33 of Tennessee Code Annotated.

Plaintiff filed a response to Metro and General's motion for summary judgment which is, in pertinent part, as follows:

> [T]he plaintiff would show that the alleged required notice was not in fact required because said defendants, The Metropolitan Government of Nashville and Davidson County and Metropolitan Nashville General Hospital had been reasonably apprised of the occurence [*sic*] of the incident from which this complaint results, as shown by the attached copies of the record of Metropolitan Nashville General Hospital.

Tenn.Code Ann. § 29–20–301 provides:

> Any person having a claim for injury to person or property against a governmental entity or its employee must give written notice, as provided for in § 29–20–302, to said governmental entity as a condition precedent to any recovery from said governmental entity or employees.

Tenn.Code Ann. § 29–20–302 provides:

(a) A claim against a governmental entity shall be forever barred whether or not this statute be pled in bar of such action, unless notice thereof is filed within one hundred twenty (120) days after the cause of action arises except where the cause of action arises out of injury resulting from the operation of a motor vehicle.

(b) Any claim filed against a governmental entity shall be in the form of a registered or certified letter by United States mail, postage prepaid, to the mayor or city attorney or the chief executive officer of the municipality in which the incident occurred or to the chairman of the county legislative body, the county attorney or the chief executive officer of the county in which the incident occurred. The claimant shall state in such letter the governmental entity against which the claim is being made, the time and place of the incident from which the claim arises and the nature of the injury sustained by the claimant.

(c) This section shall not be strictly construed where the municipality should have reasonably apprised itself of the occurrence of the incident or could have done so with the exercise of proper diligence.

Tenn.Code Ann. § 29–20–303 states that failure to comply with the notice requirements shall be a valid and complete defense to any liability of a governmental entity.

Plaintiff admits that he did not give the notice required by Tenn.Code Ann. § 29–20–302. However, he argues that Metro and General have been reasonably apprised of the occurrence of the incident from which his claim results and that, with the exercise of proper diligence, they could have apprised themselves of the circumstances relating to the incident. He bases this argument on the fact that in response to Metro and General's motion for summary judgment, he attached the hospital records and these records "reveal the entire story of the patient entering the hospital, running away, and being returned dead on arrival."

Plaintiff seeks to hang his hat on Tenn. Code Ann. § 29–20–302(c) by using General's own records as notice to General. He argues that General's own records establish that it was "reasonably apprised ... of the occurrence of the incident" out of which the claim arose.

However, a reading of Tenn.Code Ann. § 29–20–302 reveals that it is the "municipality" which is to be reasonably apprised of the incident. Since, for the purposes of this opinion, we will consider "municipality" to be synonymous with "governmental entity," the question arises as to what person in the governmental entity must be "reasonably apprised." We believe that the intent of the legislature was to stipulate that even the less than strict construction as to notice provision was to refer to the same party who must receive written notice, that is, the chief administrative officer. In the instant case, at the very least, the chief administrative officer of General would have to be "reasonably apprised ... of the occurrence of the incident" out of which the claim arose. There is no evidence that the chief administrative officer had any such knowledge merely by virtue of the plaintiff's deceased medical records.

Where a plaintiff relies upon subsection (c) to avoid the strict notice requirements, the burden is upon the one making the reliance to come forward with facts in affidavit form to at least create a debatable issue as to whether it could be reasonably concluded that the governmental entity could have or should have reasonably apprised itself of the occurrence of the incident with the exercise of proper diligence.

The party who must receive the written notice or the notice from which it could be reasonably concluded that the governmental entity was able to reasonably apprise itself of the occurrence was and is the chief administrative officer.

Mr. Stone, the Director of Hospitals for the Metropolitan Board of Hospitals, is the chief administrative officer. He states in his affidavit that he never received the

notice as required by the Tennessee Governmental Tort Liability Act. Plaintiff does not counter that statement.

The Trial Judge correctly granted Metro and General's motion for summary judgment.

Plaintiff's next issue is: "Whether the Court erred in granting a summary judgment motion to defendants, Vanderbilt University and D.R. Doyle, M.D., when the plaintiff argued that the facts of this case brought it under the common knowledge exception to the requirement for countervailing affidavits by medical experts."

Plaintiff correctly argues that summary judgment is not to be rendered unless it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn.R.Civ.P. 56.03. The burden of showing that there is no genuine issue of material fact falls on the party moving for summary judgment. *Taylor v. Nashville Banner,* 573 S.W.2d 476, 480 (Tenn.App. 1978), and in ruling on the motion for summary judgment, courts must view the pleadings and evidence in the light most favorable to the party opposing the motion. *Wyatt v. Winnebago Industries, Inc.,* 566 S.W.2d 276, 279 (Tenn.App.1977).

■ Expert testimony is required to establish negligence and proximate cause in malpractice actions unless the alleged malpractice is within the common knowledge of laymen. *Phelps v. Vanderbilt University,* 520 S.W.2d 353 (Tenn.App. 1974). In medical malpractice cases, only the most obvious form of negligence may be established without expert testimony. For example, any lay person would know that leaving a sponge in the plaintiff's body is negligence. *Rural Educational Association v. Bush,* 42 Tenn.App. 34, 298 S.W.2d 761 (1956).

In *Bowman v. Henard,* 547 S.W.2d 527 (Tenn.1977), our Supreme Court held that while motions for summary judgment are generally inappropriate in professional malpractice cases, if the only issue is one which requires expert testimony and there is no expert response to an affidavit by an expert, then summary judgment is proper. *Id.* at 530.

Here, plaintiff contends that the affidavits submitted by Vanderbilt and Dr. Doyle should not have been held to be conclusive because the acts complained of were negligent as a matter of common knowledge.

This Court has held that the common knowledge exception is applicable only in "exceptional cases." *German v. Nichopoulos,* 577 S.W.2d 197 (Tenn.App.1978). In *German,* the Court stated that for the common knowledge exception to apply, "medical negligence [should be] as plain as a fly floating in a bowl of buttermilk." *Id.* at 202.

The Tennessee Supreme Court, in *Baldwin v. Knight,* 569 S.W.2d 450 (Tenn.1978), held that the common knowledge exception applied where plaintiff suffered a cut just below his knee while mowing his lawn. There, the physician treated the plaintiff but failed to take x-rays. The plaintiff continued to have problems with the cut and later consulted another physician who removed a one-inch piece of wire from the wound. In *Baldwin,* the Court noted the location of the wound and, reasoning that it probably was caused by a flying object, held that expert testimony was not required to show the possibility of a foreign body in the wound. The Court simply held that where a plaintiff suffered a cut while mowing his lawn, the physician should have recognized the possibility that a foreign object might be present and that a lay person could also understand this simple proposition.

In *Runnells v. Rogers,* 596 S.W.2d 87 (Tenn.1980), a case in which the plaintiff also suffered an injury while mowing his lawn, plaintiff immediately consulted his physician, who discovered through x-rays that a small piece of wire was imbedded in his foot. The physician initially attempted to remove the wire but was unsuccessful. The physician continued to treat the plaintiff for some three weeks. Plaintiff's condition grew steadily worse, but the physician never made another attempt to remove

the wire. Plaintiff sought the advice of another physician, who removed the wire, and plaintiff recovered from the foot injury.

At trial, plaintiff presented no expert medical evidence, and the physician did not testify or offer any proof. Part of the plaintiff's proof was the statement of the Medical Malpractice Review Board which found that defendant "did not conform to reasonable standards as would be expected of an emergency room physician in that he failed after several visits to recommend appropriate consultation." *Id.* at 89. In *Runnells,* the Court found that "in the totality of the circumstances," this was a proper case for application of the common knowledge exception. The Court went on to state:

> It is within the common knowledge of laymen that where a patient is injured by a piece of wire imbedded in his foot, the foot has swollen to the point that the shoe may not be worn, the patient has difficulty in walking, there is soreness resulting from probing in an unsuccessful effort to remove it, and the foot is oozing and running, then the wire must be removed. These facts must be considered in the light of the action of [the second doctor] in reducing the infection and removing the wire.
>
> Even a barefoot boy knows that when his foot is infested by a sticker, splinter, thorn, pin, or other foreign object, it must be removed. Most assuredly this lies within the ken of a layman.

*Id.* at 90. The Court, in *Runnells,* further stated: "We stand four-square behind *Bowman v. Henard, supra,* and the general rule requiring medical testimony," *Id.* at 91, and emphasized that the common knowledge exception was to be applied only in limited exceptional circumstances.

Courts in other states also recognize the limited applicability of the "common knowledge" exception. The Illinois Court of Appeals has held that "the exception is rarely applied and strictly limited to its facts." *Taber v. Riordan,* 83 Ill.App.3d 900, 38 Ill.Dec. 745, 403 N.E.2d 1349, 1354 (1980).

The Connecticut Supreme Court, in commenting upon the exception, stated as follows:

> It is well settled that the plaintiff cannot prevail unless there was positive evidence of an expert nature from which the jury could reasonably conclude that the defendant was negligent, except where there is manifest such gross want of care or skill as to afford, of itself, an almost conclusive inference of negligence that the testimony of an expert is not necessary.

*Puro v. Henry,* 188 Conn. 301, 449 A.2d 176, 178 (1982) (citations omitted).

Plaintiff complains that the decedent was "unrestrained and unsupervised." He characterizes the decedent as having been left on a stretcher in the emergency room. The facts clearly show that Dr. Doyle made an informed medical decision to place decedent, who was at the time in a catatonic state, on a stretcher in the center of the rectangular emergency room for observation. Neither Dr. Doyle nor other medical personnel observed any movement, resistance, or aggressive conduct by the decedent for some three or four hours. When the decedent jumped up and bolted from the emergency room, Dr. Doyle was only a few feet behind him. Security guards and medical personnel ran after him but were unable to apprehend him.

The decedent was not left unsupervised. However, plaintiff seems to find fault with the degree of supervision. We are of the opinion that these are matters requiring expert medical evidence and are not within the knowledge of ordinary lay persons.

We do not believe it can be said that the ordinary layman possesses the knowledge concerning whether a mental patient in a catatonic state should or should not be restrained. We are of the opinion that only a medical expert is competent to testify whether the decedent should have been put in a strait jacket or locked in a room alone, or kept in an area where medical personnel were standing over him.

We hold that when taken in the totality of the circumstances, the alleged negligent acts of Dr. Doyle do not fall within the common knowledge exception. The proper treatment of a patient with serious mental problems who had previously been hospitalized for such problems, and who is in a catatonic state, is not within the common knowledge of ordinary lay persons. Plaintiff in no way sets out what Dr. Doyle should or should not have done in this case. He merely sets out certain facts and then states: "Plaintiff believes that these facts reveal medical negligence and make expert opinion unnecessary."

The affidavit of Dr. Norman Hasty, an emergency room physician at Baptist Hospital in Nashville, states:

> [T]he decision not to restrain the patient on the emergency room stretcher complied with the standard of acceptable medical practice recognized in this community.... [T]he doctor and medical personnel on duty in the emergency room acted properly by leaving the patient unrestrained on a stretcher in an area where he could be observed by the physician and staff in the emergency department.

Dr. Hasty concludes: "There are no other medical tests or examinations that would be required of a reasonably prudent physician in order to determine whether a patient would become excited or agitated to the point that he might suddenly run from the emergency room."

Plaintiff also insists that the affidavits of Dr. Doyle and Dr. Hasty should not be viewed as conclusive because after their affidavits were filed, plaintiff filed an affidavit which contained "new and pertinent facts not considered by Dr. Doyle and Dr. Hasty." Plaintiff insists that his affidavit shows that he advised Dr. Doyle that the decedent was "subject to run away." He reasoned that since this fact is not specifically addressed by either Dr. Doyle or Dr. Hasty, summary judgment was inappropriate.

Plaintiff did not provide the required expert testimony to show that even if Dr. Doyle had known that the decedent was subject to run away, she should have done anything differently in her treatment of decedent. The fact that the decedent had run away on prior occasions does not mean that he might or might not run away again. He was in a catatonic state and remained that way for several hours. We are of the opinion that this fact is not within the common knowledge of an ordinary lay person. We are of the opinion that it was necessary for plaintiff to submit expert medical proof to rebut defendants' expert medical proof. The Trial Judge properly granted summary judgment for Dr. Doyle and Vanderbilt.

The judgment of the Trial Court is affirmed and costs are assessed against plaintiff. The cause is remanded to the Trial Court for the collection of costs and any further necessary proceedings.

TODD, P.J., and KOCH, J., concur.