IN RE:  ESTATE OF HAROLD JENKINS,  )
                           )
          Deceased,                )
                           )
HUGH C. CARDEN and DONALD GARIS, )
                           )
         Co-Executors/Appellees,    )     Sumner Chancery
                           )     No.  93P-30
CLAIM OF:                   )
                           )     Appeal No.
BILLY R. PARKS,             )     01-A-01-9504-CH-00135
                           )
         Claimant/Appellant.      )

FILED

Oct. 20, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

IN THE COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CHANCERY COURT OF SUMNER COUNTY

AT GALLATIN, TENNESSEE


HONORABLE TOM E. GRAY, CHANCELLOR


Denty  Cheatham
CHEATHAM & PALERMO
43 Music Square West
Nashville, Tennessee  37203
ATTORNEY FOR THE ESTATE


James C. McBroom
Jonathan R. Stephens
FINCH & MCBROOM
211 Printers Alley, Suite 502
Nashville, Tennessee  37201
ATTORNEYS FOR CLAIMANT/APPELLANT


REVERSED AND REMANDED


                       HENRY F. TODD
                       PRESIDING JUDGE, MIDDLE SECTION


CONCUR:
BEN H. CANTRELL, JUDGE
WILLIAM C. KOCH, JR., JUDGE

IN RE: ESTATE OF HAROLD JENKINS, )
                                )
      Deceased, )
                                )
HUGH C. CARDEN and DONALD GARIS, )
                                )
      Co-Executors/Appellees, )      Sumner Chancery
                                )      No. 93P-30
CLAIM OF: )
                                )      Appeal No.
BILLY R. PARKS, )      01-A-01-9504-CH-00135
                                )
      Claimant/Appellant. )

O P I N I O N

The claimant, Billy R. Parks, has appealed from a summary judgment of the Probate Court dismissing his claim against the captioned estate. Appellant presents the issues in the following form:

> 1. The Chancellor erred in ruling that Mr. Parks had no legal basis for making a claim on the theories of implied or quasi contract, or a theory of unjust enrichment of Mr. Jenkins.

> 2. The Chancellor erred in ruling that Mr. Parks could not recover under an implied or quasi contract theory because of the existence of an express contract between the parties.

The subject claim is summarized on its face as follows:

| | |
|---|---|
| Various contract labor items consisting of a minimum of 8,993 man hours beginning in 1973 and ending in 1993, itemized list of which is attached, and based upon open account, quantum meruit and/or promissory estoppel | $134,895.00 or $20,000.00 (8,993 hrs. x $15.00)<br><br>No credits against this account |

Attached to the claim is a two page itemization listing 22 occasions from 1972 to 1991 when claimant performed various services for deceased which consumed amounts of time varying from 4 to 3,000 hours, totaling 8,993 hours.

The executors moved to dismiss the claim pursuant to T.R.C.P. Rule 56 (Summary Judgment). The motion was supported by affidavit of co-executor Donald W. Garis, stating in substance the following:

The deceased was a successful entertainer and business man who employed a number of employees. Affiant kept his books and records from 1973 until his death and was aware of all decedent's relations with and payments to his employees, including the claimant. Claimant's record contained payments, loans and advances to claimant, but no record of any of the charges alleged in claimant's claim or any indebtedness to him. The records indicated that, from 1972 through 1993, deceased paid claimant $642,891 salary, and $137,401 percentage of concession sales. Affiant is unaware of any other obligation of deceased to the claimant, or of any custom or practice of deceased to pay any agreed amount to any employee as severance pay. Two employees received a gift of $20,000 after twenty years service, but not at termination of their employment. Other twenty year employees received no such gift. The survivors of deceased agreed to give each employee $100 per year of service for termination pay which was received but not approved by claimant.

Claimant filed his affidavit stating the following:

> 2. That his job, as hired by Conway Twitty or Harold Jenkins, was to be a full-time bus driver.
> 3. That everything that he has included in his claim was work that was not part of his regular job and that was acknowledged by Harold Jenkins as other work.
> 4. That all of the projects listed in his claim were duties which were required of him in addition to or separate business dealings with Conway Twitty, a/k/a Harold Jenkins.
> 5. That he was constantly assured by Conway Twitty, a/k/a Harold Jenkins, that he would be "taken care of" and rewarded for the extra work which was ordered by Harold Jenkins, a/k/a Conway Twitty, which is the basis of his claim filed in this cause.
> 6. That a tradition was established by Conway Twitty, a/k/a Harold Jenkins, of rewarding twenty year employees with a bonus of $20,000 at the conclusion of that twenty years. It was promised to Affiant that he would be reimbursed for the things contained in his claim by at least an award of the $20,000 bonus on his twenty year anniversary.
> 7. At the twenty year anniversary of the employment of the Affiant, Conway Twitty, a/k/a Harold Jenkins, announced to him and others that things were "tight" because Conway was building his mansion for his family to live in and that if everyone would stick together, the next year would be better and Conway's commitments would be met including the increases in salaries, bonuses, twenty year bonuses, and to repay Affiant for the things listed in his claim.

. . . .

8. That Affiant has performed all of the extra work contained in his claim and that none of this was part of his regular employment but was done at the direction of Harold Jenkins, a/k/a Conway Twitty, that all of these duties were extra work ordered by Conway Twitty, a/k/a Harold Jenkins, and not a part of his job. None of these extra duties or business arrangements between the Affiant and Conway Twitty, a/k/a Harold Jenkins, were to be billed from Twitty Enterprises but were a separate undertaking between Conway Twitty, a/k/a Harold Jenkins, and this Affiant. These were to be personal obligations of the deceased with this Affiant.

9. That he, nor to the best of his knowledge, any employee of the deceased had a written contract. All of his dealings and all of his contracting with the deceased were oral contracts. His extra business arrangements with the deceased were all oral but that other people know about these contracts including Billy Blythe.

The executors objected to all testimony of the claimant prohibited by T.C.A. §24-1-203 which provides:

> **Transactions with decedent or ward. -** In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. Provided, if a corporation be a party, this disqualification shall extend to its officers of every grade and its directors. . . .

Claimant also filed the affidavit of Billy Blythe, a fellow employee, which stated the following:

> . . . 5. That he is aware and personally witnessed many substantial extra duties which the deceased called upon Billy Parks to perform for the deceased personally and for which he was not paid.
> 6. [That] he personally heard the deceased state to Billy Parks on many occasions that he would be rewarded for the extra work which he was performing. Some of this extra work included taking care of the deceased's automobiles, personal affairs, household and yard work, and driving the coach or cars during holidays, vacation and time off for Billy Parks. The deceased stated that he would "take care of Billy Parks" and that Billy Parks would be rewarded for all of these extra duties and business and work undertakings of Billy Parks on behalf of the deceased, all of which was separate from Billy Parks' job.
> 7. That he personally knows that Billy Parks has performed substantial work on behalf of the deceased which was not part

of Parks' regular job but for which the deceased promised that Parks would be rewarded and taken care of including but not limited to being given a bonus on his twentieth anniversary of working for the deceased in the amount of at least $20,000.

The record contains the depositions of the claimant and the widow of deceased, but nothing is cited or found therein which is determinative of this appeal.

The Trial Judge found:

> . . . [F]or purposes of this motion, the Court should consider it established as a fact, in accordance with the affidavit of Billy Blythe, that the late Harold Jenkins, a/k/a Conway Twitty made an oral promise to "take care of Billy Parks," which is also described by Mr. Parks, in his deposition, as an oral promise that he would "always be taken care of" by the late Mr. Twitty; the Court considers that this oral promise is, however, an illusory promise, too vague and uncertain as to its meaning as to be legally enforceable; the Court further finds, based upon the undisputed facts as to the amounts of compensation and benefits paid for Mr. Parks' services by Conway Twitty, that Mr. Parks has no legal basis for making a claim on theories of implied or quasi contract, which would require him to show that Mr. Twitty was unjustly enriched; owing to the existence of an express contract of employment between the parties, it does not appear that the doctrines of implied contract or quasi contract would be applicable; and it further appears from the undisputed facts that Mr. Parks' employment contract, which was entirely oral, did not require Mr. Twitty to pay Mr. Parks any certain amount after twenty years of service or upon termination of his service, it being undisputed that there were at least four other employees with more than twenty years of service who did not receive any bonus or severance pay, and it also being undisputed that Mr. Parks reached the twentieth anniversary of his employment with Mr. Twitty during his lifetime, and no notice of that fact was taken by Mr. Twitty which would indicate any intent to reward Mr. Parks upon obtaining that many years of service; it thus appears that there is no genuine issue as to any material fact, the resolution of which would entitle the claimant Billy Parks to recover on any of the legal theories he has asserted in his claim, and the estate is therefore entitled to a judgment as a matter of law, dismissing such claim; . . . .

This Court disagrees with the findings of the Trial Court "that the undisputed facts that Mr. Parks' employment contract . . . did not require Mr. Twitty to pay Mr. Parks any certain amount after twenty years service."

The affidavit of Billy Blythe, quoted above, is not subject to the quoted statute. It states unequivocally that:

> 7. That he personally knows that Billy Parks has performed substantial work on behalf of the deceased which was not part of Parks' regular job but for which the deceased promised that Parks would be rewarded and taken care of including but not limited to being given a bonus on his twentieth anniversary of working for the deceased in the amount of at least $20,000.

Since the record contains admissible evidence of an oral promise for a consideration to pay a specified amount upon performance of a specified condition, there is not undisputed evidence authorizing a judgment of dismissal or disallowance of the claim for the promised amount.

The executors insist that the claim for compensation based upon an implied contract cannot be honored where there exists an express contract on the same subject, citing *Jaffe v. Bolton,* Tenn. App. 1991, 817 S.W.2d 19. In that case, tenants under a written lease were denied compensation for improvements made to the leasehold under the theory of implied contract or unjust enrichment when the written lease expressly provided that all improvements by lessees should belong to the lessors.

In the present case, the issue of whether or not a contract existed which would preclude extra compensation remains to be decided. Until this issue is determined, there is no basis for any conclusory application of the rule of *Jaffe v. Bolton.*

No determinative evidence is found on the subject of unjust enrichment.

It is the burden of the party seeking a summary judgment to present uncontradicted evidence of facts which entitle that party to summary judgment as a matter of law. *Tucker v. Metropolitan Government,* Tenn. App. 1984, 686 S.W.2d 87; *Read v. Thomas,* Tenn. App. 1984, 679 S.W.2d 467.

The vague promise to "take care of" claimant is insufficient to support a recovery. To this extent, the ruling of the Trial Judge was correct. However, this theory of recovery exists only in the evidence, and not in the claim, quoted above. The "vague promises" were offered as circumstantial support of the claim as presented, and their rejection does not justify the rendition of summary judgment dismissing the claim.

For the reasons stated, the summary judgment dismissing (disallowing) the claim of claimant for $20,000 is reversed and vacated, and the cause is remanded for a hearing and disposition of the merits of the claim. Costs of this appeal are taxed against the co-executors.

Reversed and Remanded.

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

_____
BEN H. CANTRELL, JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE