SHEILA PROFFITT,                          )
                                          )
          Plaintiff/Appellant,            )
                                          )     Davidson Circuit
                                          )     No. 95C-2416
VS.                                       )
                                          )     Appeal No.
                                          )     01A01-9604-CV-00144
PRISON HEALTH SERVICES, INC.,             )
                                          )
          Defendant/Appellee.             )

FILED

July 31, 1996

Cecil W. Crowson
Appellate Court Clerk

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE


HONORABLE HAMILTON V. GAYDEN, JR., JUDGE


RONALD W. McNUTT
Williams and Dinkins
203 Second Avenue, North
Nashville, Tennessee 37201
ATTORNEY FOR PLAINTIFF/APPELLANT


CYRUS L. BOOKER
Booker & Associates
First American Center, Suite 1280
315 Deaderick Street
Nashville, Tennessee 37238-1280
ATTORNEY FOR DEFENDANT/APPELLEE


REVERSED AND REMANDED.


                         HENRY F. TODD
                         PRESIDING JUDGE, MIDDLE SECTION


CONCURS:
SAMUEL L. LEWIS, JUDGE


CONCURS IN SEPARATE OPINION
WILLIAM C. KOCH, JR., JUDGE

SHEILA PROFFITT,                              )
                                             )
        Plaintiff/Appellant,                  )
                                             )        Davidson Chancery
                                             )        No.  95C-2416
VS.                                          )
                                             )        Appeal No.
                                             )        01A01-9604-CV-00144
PRISON HEALTH SERVICES, INC.,                 )
                                             )
        Defendant/Appellee.                   )


                           O P I N I O N


        The captioned Plaintiff has appealed from a summary judgment dismissing her suit

for failure of the Defendant to provide needed treatment to Plaintiff.  The complaint alleges:

>        1.    Plaintiff is a citizen of Donelson, Davidson County,
> Tennessee.  At the time her cause of action arose for deliberate
> indifference to serious medical needs and failure to exercise
> ordinary care to provide medical needs, she was incarcerated at
> the Tennessee Prison for Women in Davidson County, Tennessee.
>
>        2.    Plaintiff was dependent upon Prison Health Services to
> provide for her medical needs while incarcerated in Davidson
> County.
>
>        3.    Plaintiff Sheila Proffitt was incarcerated at the Bradley
> County Justice Center with a broken leg and a leg cast prior to
> her arrival at the Tennessee Prison for Women on April 25, 1994.
> Prior to her departure, she was examined by Pat Younger, M.D.,
> a physician of the Orthopedic Group of Cleveland, Inc., who
> determined that her fracture was not healing and that her
> transfixing screws should be removed from the femur to promote
> healing.
>
>        4.    Ms. Proffitt was transferred to the Tennessee Prison for
> Women.  During her April 25, 1994 initial medical evaluation,
> she was examined by Dr. Manning who indicated she would be
> seen by an orthopedic specialist.
>
>        5.    On June 10, 1994, Ms. Proffitt was evaluated by Patrick
> LeCorps, M.D. at Meharry/Hubbard Hospital.  Dr. LeCorps
> intended to conduct an x-ray but was informed by the officers
> escorting her that there was no authorization for that diagnostic
> procedure.
>
>        6.    On July 21, 1994, Plaintiff's attorney called the prison
> to speak to the Assistant Warden to emphasize her need for
> treatment.  On July 29, 1994, plaintiff saw Donald Boatwright,
> M.D. at the prison, who informed her she would be evaluated
> again by the orthopedic specialist.

7. On August 12, 1994, plaintiff was again evaluated by Dr. Patrick LeCorps at Meharry/Hubbard Hospital. Dr. LeCorps determined that Ms. Proffitt needed surgery to remove two bolts at the knee to allow the femur bone to heal. Despite her immediate need for surgery to remove the pins because her bones were not healing, and despite Dr. LeCorps' request that she have the surgery, Prison Health Services failed to arrange the surgery.

9. Plaintiff was recommended for parole but was unable to be paroled to Samaritan Recovery Center because of her untreated leg condition. Therefore her parole plan was denied on August 22, 1994 by Parole Officer Clara Vaughn. Mr. Tom Vance wrote to the Parole Board the appended letter. As a result, the Parole Board and Parole Officer allowed her to be paroled in November into the custody of Mr. and Mrs. Tom Vance.

12. Defendant Prison Health Services, Inc. is liable for the actions and omissions of its agents that violate plaintiff's rights pursuant to the common law doctrine of respondeat superior.

14. Defendant Prison Health Services, Inc., through its employees and agents, acted with deliberate indifference to Sheila Proffitt's serious medical needs in violation of the Eighth Amendment to the United States Constitution and 42 U.S.C., Section 1983. Defendant Prison Health Services acted under color of state law by virtue of its performance of state functions and its authority under state law.

Although the complaint does not expressly allege a contractual relationship between the State of Tennessee and the Defendant, the above quotations raise an inference that the suit is in part based upon violation of a duty imposed by a contract between the State and the Defendant. The complaint also asserts liability for deliberate indifference which might be established even though no violation of the existing contract occurred.

Defendant moved for summary judgment supported by affidavits of two physicians. The affidavit of Donald Boatwright, M.D., states:

My speciality is Internal Medicine. I serve as Medical Director at the Tennessee Prison for Women ("TPW"), and have served in said position during all time relevant to the time period encompassed in this affidavit. I am not an employee of PHS, but rather serve as an independent contractor under contract with PHS.

3. Ms. Proffitt arrived at TPW on or about April 25, 1994. I am aware that part of Ms. Proffitt's complaints related to a

request that a pin and/or screw ("screws") be removed from her leg. The screws had been placed prior to Ms. Proffitt's arrival at TPW, as part of the procedure for repairing a fracture of Ms. Proffitt's leg.

4.    X-rays were taken of Ms. Proffitt's knee. A request was made for approval of surgery to remove the screws. A request was made for Dr. LeCorps to see Ms. Proffitt for an orthopedic consult.

5.    The request for surgery to remove the screws was approved on May 27, 1994. In scheduling the surgery, consideration is given to the priority given to the needed procedure. To the extent other inmates are in need of surgical procedures, surgery for a particular inmate may be delayed if there is no medical urgency in performing the procedure which has been approved.

6.    Ms. Proffitt was scheduled to see Dr. LeCorps on June 10, 1995 (sic). Dr. LeCorps requested additional x-rays, and scheduled Ms. Proffitt for a return visit. The requested additional x-rays were taken in June, 1994.

7.    Ms. Proffitt had a return visit to Dr. LeCorps in July, 1994.

8.    Ms. Proffitt advised medical personnel on July 23, 1994, that she was scheduled to appear before the Parole Board on August 22, 1994.

9.    The surgery approved for Ms. Proffitt was not a high priority procedure. Ms. Proffitt was released from prison in November, 1994, and the surgery had not been scheduled prior to her release. There was no refusal on the part of PHS to approve the surgery. The surgery was approved, but was not scheduled prior to Ms. Proffitt's release from prison.

10.    The delay in performing surgery did not constitute deliberate indifference or medical malpractice or negligence. Ms. Proffitt's condition was not such that her medical condition was made worse by delaying surgery.

11.    To my knowledge, at no time have any medical personnel at TPW exhibited indifference, deliberate or otherwise, to any of Ms. Proffitt's medical needs.

12.    The medical care rendered to Ms. Proffitt's medical needs were met during the period of her incarceration at TPW.

The affidavit contains evidence that the need for surgery was confirmed on May 27, 1994, and that no surgery was scheduled prior to Plaintiff's release on parole in November,

1994, six months later. The only explanation given for the delay is that "consideration is given to the priority." Also relevant is that employees of Defendant were aware of the possibility of parole, and that the affiant was an independent-contract employee of Defendant who could and should have supported his conclusory statements with evidence that other more urgent surgery prevented Plaintiff's needed surgery for approximately six months..

The affidavit of Craig Underwood states:

1. I am currently a Regional Manager for Prison Health Services, Inc.

2. Prior to occupying my current position, I was the Health Services Administrator at the Tennessee Prison for Women in Davidson County, Tennessee ("TPW") and had been so employed from June 15, 1991, until December 15, 1994.

3. I am aware of the medical complaints of Plaintiff, Sheila Proffitt, Inmate No. 210324, as part of my duties and responsibilities at TWP.

4. I am aware that part of Ms. Proffitt's complaints related to a request that a pin and/or screw ("screws") be removed from her leg. The screws had been placed prior to Ms. Proffitt's arrival at TPW, as part of the procedure for repairing a fracture of Ms. Proffitt's leg.

5. A request was made for approval of surgery to remove the screws. The request was approved on May 27, 1994.

6. Once approval is obtained for surgery, the decision relating to scheduling the surgery is primarily a medical decision. In scheduling the surgery, consideration is given to the priority given to the needed procedure. To the extent other inmates are in need of surgical procedures, surgery for a particular inmate may be delayed if there is no medical urgency in performing the procedure which as been approved.

8. The surgery approved for Ms. Proffitt was not a high priority procedure. Ms. Proffitt was released from prison in November, 1994, and the surgery had not been performed prior to her release.

9. There was no refusal on the part of PHS to approve the surgery. The surgery was approved, but was not scheduled prior to Ms. Proffitt's release from prison.

10. PHS does not engage in any pattern of practice whereby

the profit motive prevails over the medical needs of inmates, resulting in necessary medical care being denied to inmates. PHS did not engage in any such practice with respect to the treatment rendered to Ms. Proffitt.

11. Medical staff at TPW are required to treat patients on the basis of all known medical conditions, and may not fail to do so in retaliation for any conduct or actions on the part of an inmate. PHS does not have any policy or custom which permits any of its employees to exhibit deliberate indifference to the medical needs of an inmate. PHS does not have any policy or custom whereby necessary medical care is denied inmates because profit motive prevails over medical needs.

12. The state of Tennessee retains final authority relating to the medical care rendered to inmates who are confined to the custody of the Tennessee Department of Corrections and housed at TPW.

13. At no time have I, or any other medical personnel at TPW, exhibited indifference, deliberate or otherwise, to any medical needs of Ms. Proffitt.

14. To my knowledge, all of Ms. Proffitt's medical needs were met during the period of her incarceration at TPW.

It is noteworthy that the affiant was an employee of Defendant and that the affidavit attempts to shift liability to the State by a conclusory statement that is not supported by documentary evidence.

Plaintiff filed the affidavit of Charles A. Rosenberg, M.D. which states:

Charles A. Rosenberg, M.D., first being sworn according to law, deposes and says: I am a physician with specialty in internal medicine and have served as a consultant and expert witness in the field of delivery of health services in prisons and jails.

The level of medical care provided this inmate at TPW was inadequate, unacceptable, and below that of the community standard. Indeed, the care provided in this respect appeared so cursory as to be considered deliberately indifferent to this inmate's serious medical needs. The inescapable conclusion arrived at by this reviewer is that the decision to deprive this inmate from receiving this clearly indicated orthopedic care was motivated by non-medical reasons. An incarcerated inmate, at whatever level of custody, city, county, state or federal, is a ward of the correctional authority in charge, which is responsible for delivery of community-level health care, as well as security. A contract health care provider (such as PHS), as an agent of the correctional authority in charge, must meet a similar standard. Such a standard was not met in this case.

On appeal, Defendant insists that this affidavit is inadmissible because the affiant is not qualified under the geographical qualifications of TCA § 29-26-115(b). It does not appear from the record that this objection was presented to the Trial Court. Ordinarily a rule of evidence not invoked is waived. *Burchett v. Stephens*, Tenn App. 1990, 794 S.W.2d 745; *Wachovid Bank & Trust Co. NA v. Glass*, Tenn. App. 1978, 57 5 S.W.2d 950. However, the judgment of the Trial Court states:

> Plaintiff's failure to provide competent expert proof in support of Plaintiff's claims ---"

This may indicate that the Trial Court excluded the Rosenberg affidavit sua sponte. In any event, as will appear hereafter, the competence of that evidence is not determinative of this appeal.

The deposition of Dr. Patrick J. LeCorps states:

> Q. Now, with respect to the May 27th, 1994 authorization, what does it say with regard to when the surgery is to be scheduled?
>
> A. It's to be scheduled within three weeks unless symptoms become more serious or the patient's condition changes.
>
> Q. Do you know whether the standard that the Department of Correction applies for operations such as this is a standard of medical need?
>
> A. Well, all I know is that when a case is not considered urgent or an emergency, then PHS approved the cases between two and four weeks.
>
> Q. Do you know why that was not done in this particular case?
>
> A. I don't really know exactly why. No.
>
> Q. Is there any medical reason why it should not have been done within three weeks or four weeks?
>
> A. No, not that I know of.
>
> Q. To your knowledge, how did Prison Health Services receive income or profits for medical services?

- - -

-7-

A.  They have a contract with the state.  Then the state --
you know, the states want to have a budget, so they contract
the Prison Health Services to take care of the medical problems
of the inmates.  They have a straight fee every year.  The prison
has now -- they contract some physicians to provide the care.

Q.  Would you get paid by Prison Health Services?

A.  Yes.  Since I was just a consultant, I would bill for my
services PHS, yes.  I would bill PHS for my services.

The deposition of Dr. Donald Boatwright contains little explicit information, but apparently attempts to shift the blame for delay to the failure of Dr. LeCorps to request authorization to proceed with the needed surgery.  The deposition does authenticate an "Authorization of Service" from Defendant's Utilization Review Coordinator  to Dr. Boatwright under date of May 27, 1994.  It states:

Based upon the medical information that you have
provided the Tennessee Women's Prison Jail/Prison,
the removal of pins and screw has been approved.

An appointment has been approved for the removal
of pin and screws from the knee as an outpatient
service.

Please schedule within 03 weeks unless symptoms
become more severe or the patient's condition changes.

Authorization for payment of service is only during
the period of actual confinement of the inmate under
the custody of the Tennessee Women's Prison Jail/Prison.
Payment is based upon current reasonable and customary
charges of Blue Cross/Blue Shield, Medicare, Medicaid,
or current negotiated rates.

*  All further tests, treatments, procedures and or admission
or extended hospitalization must be pre-authorized to ensure
payment of service.

On appeal, no presumption of correctness follows a summary judgment which is a ruling of law and not of fact.  *Roberts v. Roberts*, Tenn App. 1992, 843 S.W.2d 427.

It is the burden of a party seeking a summary judgment to show uncontradicted facts which entitle the movant to judgment as a matter of law. *Tucker v. Metropolitan*

*Government*, Tenn. App. 1984, 686 S.W.2d 87; *Read v. Thomas*, Tenn. App. 1984, 679 S.W.2d 467.

In determining whether or not a genuine issue of fact exists in a summary judgment case, the Court must look at all the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion and indulge all reasonable inferences in favor of the opponent; and, if there is any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied, *Dooley v. Everett*, Tenn. App. 1990, 805 S.W.2d 380.

The complaint alleges two causes of action for the same injury, (1) Violation of duty to provide remedial surgery within a reasonable time as required by contract, and (2) Independent of contract, failure to provide remedial surgery in deliberate indifference to the needs of Plaintiff.

The rules relating to motions for summary judgment place no burden of producing evidence upon the opponent of the motion except as contradiction or rebuttal of evidence offered by the proponent which, if uncontradicted or unrebutted, entitle the movant to judgment as a matter of law.

In this case, the first inquiry must be, does the evidence supporting the motion for summary judgment, if uncontradicted and unrebutted, entitle the Defendant to summary judgment as to either or both of the grounds stated in the complaint. The gravamen of the complaint is the failure of the Defendant to provide medical service, rather than the quality of services.

The defendant recognized this distinction, and undertook to show that the long delay in delivery of authorized services was not wrongful because of priorities. However, the conclusory affidavit of a physician that the needs of plaintiff were not high priority, that

consideration is given to priority of need and that surgery may be delayed by need to perform other surgery of higher priority is not sufficient to exonerate Defendant of blame for delay as a matter of law. Uncontradicted evidence that needs of higher priority actually did render defendant unable to supply the service sooner might suffice, but such specific and definitive evidence was not offered.

Defendant relies upon T.C.A. § 29-26-115 which provides in pertinent part as follows:

> **Claimant's burden in malpractice action - Expert testimony - Presumption of negligence - Jury instructions.** - (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
>
> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witness otherwise would not be available.

This statute is applicable only where the suit is based upon failure to exercise professional care and skill. As previously pointed out, the complaint is not based upon a

violation of professional standards of skill or care in performing professional services, but upon a delay in providing such services.

In *Rural Educational Assoc. v. Bush*, 42 Tenn. App. 34, 298 S.W.2d 761. (1956), this Court held:

> Professional or expert testimony was not necessary to establish that leaving a sponge in Plaintiff's body was negligence. Any layman would know that fact.
> 42 Tenn. App. At 47.

Following the reasoning of the quoted authority, "any layman (that is, any reasonable non expert), would know that a six months delay in providing approved surgery for a painful condition is negligence unless excused by conditions which required the delay.

The absence of expert testimony as required by the statute does not justify a summary judgment in cases where an ordinary layman would be authorized to find fault under the facts. Moreover, the evidence offered by Defendant does not satisfy the requirement of the statue as to conformity with the statutory professional standards for scheduling surgery.

Under the circumstances of the present case, the Defendant did not satisfy its burden of showing that the unreasonable delay in providing surgery to Plaintiff was without its fault as a matter of law. This being true, the Plaintiff was not under a burden to offer contradictory or rebuttal evidence, and the issue of the competency of Plaintiff's professional witness becomes moot.

The lack of satisfactory and conclusive evidence explaining the long and facially unreasonable delay in providing surgery for Plaintiff also prevents a summary judgment in respect to the charge of deliberate indifference; for, under the evidence in this record, a jury could properly find that the long delay in scheduling surgery amounted to deliberate

-11-

indifference to the prolonged pain of Plaintiff, for which Defendant might be liable under

*West v. Atkins*, 487 U.S. 42, 54 (1988).

The evidence in this record does not establish without dispute that Defendant is not

liable to Plaintiff on either of the grounds of Plaintiff's suit.

The summary judgment in favor of the Defendant is reversed and vacated. Costs of

this appeal are assessed against the Defendant. The cause is remanded to the Trial Court for

further proceedings.

REVERSED AND REMANDED

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCURS:

_____
SAMUEL L. LEWIS, JUDGE

CONCURS IN SEPARATE OPINION
WILLIAM C. KOCH, JR., JUDGE