# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

ROBERT CLARENCE PAYNE,    )
 )
 )
        Plaintiff/Appellant,    )  Hardeman Circuit  No. 8964
 )
VS.    )  Appeal No. W1999-02059-COA-R3-CV
 )
LESLIE SHUMAKE, ALAN BARGERY, )
WARDEN, and CORRECTIONS    )
CORPORATION OF AMERICA,    )
 )
 )
        Defendants/Appellees.    )

**FILED**

December 15, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF HARDEMAN COUNTY
AT BOLIVAR, TENNESSEE
THE HONORABLE JON KERRY BLACKWOOD, JUDGE

**ROBERT C. PAYNE, pro se**
Henning, Tennessee

**CLAIRE M. CISSELL**
**CHARLES C. HARRELL**
**BAKER, DONELSON, BEARMAN**
**& CALDWELL**
Memphis, Tennessee
Attorney for Appellee, Leslie Shumake

**TOM ANDERSON**
**ANDERSON LAW FIRM, P.L.L.C.**
Jackson, Tennessee
Attorney for Appellees, Alan Bargery and
Corrections Corporation of America

**AFFIRMED**

ALAN E. HIGHERS, J.

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

Robert Clarence Payne appeals from the Circuit Court of Hardeman County, which dismissed his *pro se* complaint against the defendants Leslie Shumake, Alan Bargery, and Corrections Corporation of America.

**Facts and Procedural History**

Robert Payne ("Appellant") was, at the time this dispute arose, confined as an inmate at the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee. HCCF is a correctional facility operated by one of the named defendants, Corrections Corporation of America ("CCA" or "Appellee"). Alan Bargery ("Appellee") is the warden of the Hardeman County Facility. Leslie Shumake ("Appellee") is a medical doctor licensed to practice in Tennessee who was hired by CCA to provide medical services at HCCF. The complaint arises out of the alleged malpractice of Shumake in rendering medical services to the appellant.

Payne, who appears to suffer from high-blood pressure, was called to the infirmary at HCCF on June 6, 1998 for the purpose of having his blood pressure checked. On this visit, Payne informed Shumake of pains emanating from his (Payne's) right testicle. The pain traversed Payne's right hip, then traveled along his lower back to the area of his left testicle. Payne alleges that Shumake's medical evaluation consisted of "[p]laintiff's right testicle being felt." Payne alleges that no further examination occurred. As a result of the examination, Shumake diagnosed the pain as deriving from an infection and prescribed a seven-day regimen of amoxocillin. The pain persisted and Payne again visited Shumake complaining of the same symptoms. The complaint alleges that Shumake "examined Plaintiff's testicles by feeling them and prescribed Doxycycline for one week at two a day." A third visit relating to the same symptoms culminated in a verbal confrontation between Shumake and Payne. Dr. Shumake allegedly stated that he did not know what was wrong with Payne and he could not spend any more money in treating him. Payne filed a grievance with the grievance committee at HCCF through which he sought "adequate and meaningful medical attention." Appellee Alan Bargery denied Payne's grievance finding

that Payne had received adequate medical attention.

On or about August 21, 1998, Payne was transferred to the West Tennessee State Prison where he was examined by Dr. William Potter in an intake examination. Payne described the same symptoms that he had described to Dr. Shumake and Dr. Potter conducted the same examination as had Shumake. Dr. Potter determined that Payne suffered from an infection and prescribed a fifteen-day cycle of Doxycycline. According to Payne, Dr. Potter stated that prior antibiotic cycles had not been prescribed in a sufficient number of days to cure the infection.

The original complaint in this action was filed on October 10, 1998, alleging that Dr. Shumake failed to properly diagnose and treat Payne's condition "in a manner consistent with his duties or within his expertise." Payne alleged that he was subjected to unnecessary pain and suffering due to Shumake's negligence. The complaint also asserted a cause of action against Alan Bargery and CCA due to their "inactions and indifference to his [Payne's] serious medical needs, and their duties within the provisions of Tennessee Department of corrections Policy, . . . and Tennessee Code Annotated § 41-21-204 *et seq.*"

After the original complaint in this action was filed, Payne was seen by a Dr. Zaidia at the West Tennessee State Prison. After Payne described the same symptoms, Dr. Zaidia ordered blood and urine tests. Id. Based on these tests, Dr. Zaidia diagnosed Payne as having hepatitis C. Dr. Zaidia also ordered X-rays of Payne's lower body, which resulted in the discovery that Payne suffered from kidney stones. As a result of the new diagnosis, Payne filed an amended complaint asserting that Dr. Shumake violated the standard of care by failing to order blood tests, urine tests, and X-rays. These tests, Payne alleged, would have led to the discovery of the hepatitis C and the kidney stones.

On November 19, 1998, Dr. Shumake filed a motion for summary judgment asserting that there were no genuine issues of material fact upon which liability could be

3

predicated. Pertinent to the motion, Dr. Shumake filed an affidavit in which he stated that he complied with the applicable standard of care in his treatment of the Plaintiff. Specifically, Dr. Shumake stated that he took an adequate history, performed a physical examination, arrived at a differential and primary diagnosis, and prescribed the appropriate antibiotic. Subsequently, Alan Bargery and CCA filed a motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6) asserting that the complaint failed to state a claim upon which relief could be granted. Bargery and CCA argued that they did not actually participate in or condone any specific mistreatment of Payne, nor were they involved in the medical treatment or decisions of which he complained. Payne then filed several documents with the court, including a motion for default judgment, a motion for judgment on the pleadings, a memorandum of law in opposition to the motion to dismiss for failure to state a claim, a motion to allow the filing of an amended complaint, an affidavit of disputed material facts, a set of interrogatories to Alan Bargery and CCA, a request for admissions to Dr. Shumake, a "motion in opposition to summary judgment,"[1] a petition for writ of habeas corpus ad testificandum, a second amended complaint, a motion to set aside the order of dismissal as to Alan Bargery and CCA, various affidavits, and a motion for judicial notice of adjudicative facts.

The trial court, by order dated December 10, 1998, granted the motion to dismiss filed on behalf of Alan Bargery and CCA. Also, on February 2, 1999, the trial court granted Dr. Shumake's motion for summary judgment. This appeal followed.

**Law and Analysis**

*Dr. Shumake*

The appellant in this case has, almost singlehandedly, created a two-volume record for this appeal. As noted earlier, appellant filed numerous motions and affidavits as well as many other documents not herein mentioned. In spite of the abundance of information

---

[1] In the memorandum in opposition to Dr. Shumake's motion for summary judgment, Payne made two arguments. First, he argued that his medical records, which he had been unable to obtain, would be sufficient as expert evidence to show that Dr. Shumake violated the standard of care. Secondly, he contended that the alleged medical malpractice was within the "ken of the common layman," thereby not requiring expert testimony.

4

which appellant places before this court, the dispositive issue in this case is relatively simple. That issue is whether the appellant's medical malpractice claim against Dr. Shumake can go forward in the absence of expert medical testimony to support appellant's claim. As we deem the answer to that question to be no, the trial court's dismissal of this action as to Dr. Shumake is affirmed.

A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn. 1993); Dunn v. Hackett, 833 S.W.2d 78, 80 (Tenn. Ct. App. 1992). The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. Byrd, 847 S.W.2d at 210. On a motion for summary judgment, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof; that is, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." Id. at 210-11.

In a medical malpractice action, the plaintiff has the burden of proof on the following elements: standard of care, breach of the standard of care, and causation. Tenn. Code Ann. § 29-26-115(a).[2] In order to establish each of these elements, the plaintiff must put

---

[2] § 29-26-115. Burden of proof; expert witnesses

(a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.

5

forth expert evidence, unless the act of alleged malpractice lies within the common knowledge of the layman. Ayers v. Rutherford Hospital, Inc., 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984); Bowman v. Henard, 547 S.W.2d 527, 530-532 (Tenn. 1977). Without this requisite threshold evidence of the standard of care in the locality, a plaintiff cannot demonstrate a breach of duty. See Cardwell v. Bechtol, 724 S.W.2d 739, 754 (Tenn. 1987). It is the clear position in this state that expert testimony is required in all but the most obvious cases involving allegations of medical malpractice. Ayers, 689 S.W.2d at 160; Tucker v. Metropolitan Gov't of Nashville and Davidson County, 686 S.W.2d 87, 92 (Tenn. Ct. App. 1984); See also Runnells v. Rogers, 596 S.W.2d 87, 89 (Tenn. 1980); Bowman, 547 S.W.2d at 530-531.

The simple issue in the present case is whether the alleged act of malpractice on the part of Dr. Shumake is such that expert testimony is not required. The appellant has asserted that this is the type of obvious case where expert testimony is not required. In this regard, we find it impossible to agree with the appellant. The fact that a doctor misses a diagnosis does not automatically indicate a violation of the standard of care. The sole basis for alleging that this case involves "obvious" malpractice is the appellant's assertion that Dr. Shumake failed to conduct a proper medical examination. Appellant predicates his malpractice claim on the fact that Dr. Shumake did not conduct "scientific" tests. In the absence of expert testimony, neither the appellant nor this court is in a position to say that the failure to order such tests violated the standard of care. Quite contrary to appellant's argument, we believe the present case is specifically the type of case that would require expert testimony regarding the standard of care. We find it impossible to believe that laymen would know whether Dr. Shumake should have ordered specific tests based on the

(c) In a malpractice action as described in subsection (a) of this section there shall be no presumption of negligence on the part of the defendant. Provided, however, there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendant's) exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

(d) In a malpractice action as described in subsection (a) of this section, the jury shall be instructed that the claimant has the burden of proving, by a preponderance of the evidence, the negligence of the defendant. The jury shall be further instructed that injury alone does not raise a presumption of the defendant's negligence.

6

symptoms which appellant presented.

Although the appellant seems quite sure that Dr. Shumake violated the standard of care, his belief is not relevant under the law. In Bowman, the Tennessee Supreme Court held that a counter-affidavit from an expert competent to testify must be presented in order to make a genuine issue of material fact within the meaning of Rule 56 of the Tennessee Rules of Civil Procedure. 547 S.W.2d at 531. The affidavits of lay persons regarding whether the physician's medical care was below the appropriate standard of care are wholly insufficient to create a genuine issue of material fact. As such, we find that appellant was required to submit expert testimony in order to overcome the motion for summary judgment.

Appellant states in his brief that he would submit his medical records in lieu of expert testimony.[3] The appellant asserts that his medical records, if entertained by the court, would have shown that Dr. Shumake violated the standard of care. We do not, however, believe that appellant's medical records would relate to the question of the applicable standard of care.

Medical records do not define the standard of care, nor do they state whether a doctor violated the standard of care. The medical records on which appellant seeks to rely would, at best, be evidence of what Dr. Shumake did or did not do. Presumably, those records would be relevant if appellant put forth an expert to testify as to the standard of care and then, through use of the medical records, showed that Dr. Shumake failed to conform to that standard. However, without knowing the standard of care, appellant's medical records are useless. Therefore, we reject appellant's contention that his medical records would have been sufficient to take the place of expert medical testimony.

Without evidence as to the standard of care, the appellant cannot demonstrate any breach of duty. See Cardwell, 724 S.W.2d at 754. Appellant therefore failed to carry the

---

[3] We use the word "would" because the appellant has apparently been unable to gain access to his medical records and was, therefore, unable to sumbit them to the trial court.

burden placed on him by T.C.A. § 29-26-115. As such, there was no genuine issue of material fact, and Dr. Shumake was entitled to judgment as a matter of law. The trial court correctly granted summary judgment to Dr. Shumake.

### *Alan Bargery and CCA*

We believe that the dismissal of the case against Dr. Shumake is also dispositive of the claims against Alan Bargery and CCA. Appellant alleges that Bargery and CCA allowed the "gross negligence" of Dr. Shumake to "continue to happen." Appellant's claim against these two defendants is based on a *respondeat superior* theory predicated on the medical malpractice of Dr. Shumake. Having dismissed the claim against Dr. Shumake, we find that appellant is unable to state a claim for relief against Bargery or CCA.[4] All other issues raised by appellant are similarly without merit.

### Conclusion

For the foregoing reasons, the trial court's dismissal of appellant's complaint is hereby affirmed in all respects. Costs of this appeal are taxed to the appellant, for which execution may issue if necessary.

 

 

_____

HIGHERS, J.

CONCUR:

 

_____

FARMER, J.

 

_____

LILLARD, J.

---

[4] To the extent that Appellant asserts a claim for relief based on his assertion that CCA imposed spending limits on the medical care provided to prisoners, we believe such a claim is not properly before this court. The trial court expressed no opinion on the question, and appellant's brief does not raise the spending limits as an issue. Therefore, we do not express an opinion on that issue. <u>See</u> T.R.A.P. 13(b).

8