**AIRPORT PROPERTIES, LIMITED,**
a Tennessee Limited Partnership,
Plaintiff/Appellee,

v.

**GULF COAST DEVELOPMENT, INC.,** a
Tennessee corporation, and Airport Inn,
Incorporated, a Tennessee corporation,
Defendants/Appellants.

Court of Appeals of Tennessee,
Western Section, at Nashville.

Feb. 15, 1995.

Application for Permission to Appeal
Denied by Supreme Court
May 8, 1995.

Robert L. Estes and John E. Anderson,
Stewart, Estes & Donnell, Nashville, for appellant.

Hugh C. Howser, Jr., Trabue, Sturdivant
& Dewitt, Nashville, for appellee.

TOMLIN, Presiding Judge (Western section).

Airport Properties, Limited ("Landlord" or "plaintiff"), filed suit in the Chancery Court of Davidson County against Airport Inns, Inc. ("Tenant") and its guarantor, Gulf Coast Development Company, Inc. ("Gulf Coast") (collectively, "defendants"), seeking damages for Tenant's alleged breach of a lease agreement guaranteed by Gulf Coast. Following several hearings and two nonjury trials, the chancellor granted plaintiff partial summary judgment in the amount of $117,363. The chancellor later entered a final judgment in favor of plaintiff against defendants in the amount of $160,484.83, which included an award of attorney fees, prejudgment interest and damages. On appeal, defendants have raised two issues for our consideration: whether the chancellor erred (1) in granting partial summary judgment in favor of plaintiff and (2) in refusing to consider certain evidence offered by defendants pertaining to alleged capital improvements made by Tenant. We resolve both issues in favor of plaintiff and affirm.

In December 1990, Landlord and Tenant entered into a long-term lease agreement by which Tenant was to operate, manage, and maintain a motel property located near the Metropolitan Airport in Davidson County. At the same time, Gulf Coast executed a guaranty agreement by which it agreed to perform the duties and obligations of Tenant under the lease in the event Tenant failed to

perform. The effective date of the lease was January 1991, and this was the date that Tenant went into possession.

The following portions of this lease agreement are relevant to this litigation:

ARTICLE V—Capital Improvements.

Landlord, at Landlord's sole cost and expense, shall make the capital improvements to the Demised Premises set forth on *Exhibit D* attached hereto (the "Landlord Capital Improvements") on or before the date one hundred twenty (120) days from the Commencement Date. Tenant, at Tenant's sole cost and expense, shall make the capital improvements to the Demised Premises set forth on *Exhibit D* attached hereto and additional capital improvements (the "Tenant Capital Improvements") on or before the date one hundred twenty (120) days from the Commencement Date so that the cost of the Tenant Capital Improvements equals at least $117,363.

. . . .

ARTICLE VIII—Capital Expenditures

All amounts paid by Tenant for the Tenant Capital Improvements and all other capital improvements made to the Demised Premises by or on behalf of Tenant shall be deemed to be "Capital Expenditures" for purposes of this Lease. The determination of whether an expenditure is a capital improvement shall be made by Tenant's accountants in accordance with generally accepted accounting principles consistently applied. All Capital Expenditures made during a lease year shall reduce the Percentage Rent for that year on a dollar-for-dollar basis.

. . . .

ARTICLE XXV—Default/Termination.

In the event the Tenant fails to pay the rent at the times and in the manner hereinabove provided, or upon the failure of Tenant to promptly perform any other covenant or agreement hereunder, Landlord shall notify Tenant in writing of the alleged default. The notification shall be sent as herein provided, return receipt requested. Upon receipt of said notice, the Tenant shall have ten (10) days thereafter

to cure non-payment of rent and ninety (90) days thereafter to cure any other default. If upon the expiration of the above time periods the default is not cured, or in the event the default is such that it is not curable within ninety (90) days and Tenant has not started to cure the default, then and in that event, the Landlord may terminate this Lease, and upon such termination, Landlord may re-enter and repossess itself of the Demised Premises, the Leased Equipment and the Owned Equipment and remove all persons and parties therefrom with or without legal process, and using such force as may be necessary so to do without being guilty of trespass, forcible entry or detainer or other tort. The foregoing shall not limit or preclude Landlord from other rights and remedies available at law or hereunder.

Exhibit D to the lease provided:

*Landlord's Capital Improvements*

    Roof Installed

    Outdoor Carpet (Green)

    Ice Machines (4)

*Tenant's Capital Improvements*

    Quantities Will Vary:

        Carpet

        Vinyl

        Painting

        Bedspreads

        Party Tables

The 120–day period within which Tenant was to make the Tenant's Capital Improvements passed without any of the specified minimum amount of work being done. By letter dated August 2, 1991, plaintiff advised defendants by certified mail that Tenant was in default under the lease, and that it had ninety days to cure the default. By letter dated July 8, 1991, Tenant terminated the lease, effective November 5, 1991. Plaintiff filed its complaint in December 1991, alleging breach of the lease by Tenant and seeking monetary damages against both defendants. Thereafter, defendants filed an answer and a counterclaim against plaintiff, seeking recovery of cash and certain inventory which defendants contended plaintiff took from them.

Plaintiff filed a motion for partial summary judgment as to both defendants concerning its claim for damages resulting from Tenant's failure to make the capital improvements called for in Article V of the lease. Plaintiff sought damages in an amount equal to at least $117,363, along with interest and attorney fees. Plaintiff's motion was supported by an affidavit by Carl E. Haury, a general partner in plaintiff. Haury's affidavit states that Tenant failed to perform the obligations imposed upon it by Article V of the lease agreement, and that Gulf Coast as guarantor failed to remedy the default. Haury's affidavit was supported by an exhibit in the form of a letter written to Gulf Coast's president, pointing out the potential availability of substantial savings from plaintiff's lender, who was willing under certain conditions to grant a one-year moratorium to plaintiff on the payment of principal. Savings resulting from this moratorium were to be shared equally by plaintiff and Tenant. The letter to Gulf Coast emphasized that the capital expenditures called for under the lease had to be made by plaintiff and Tenant in order to comply with plaintiff's agreement with its lender.

Defendants filed their response to plaintiff's summary judgment motion, supported by two virtually identical affidavits of officers of Shorelodge, Inc., identified as a successor in interest to Gulf Coast. While these affidavits identified certain items for which funds were allegedly expended in connection with the project, neither affidavit stated that any of the specific improvements as required by the lease were made during the 120–day period, or that they were made at all. In December 1992, the chancellor granted partial summary judgment against both defendants in the amount of $117,363, but denied any additional relief sought by plaintiff. The court's order also stated, "That at the trial of this cause *all other matters pending* are to be considered by the Court." (Emphasis added.)

Following a trial, the chancellor adopted the findings of fact and conclusions of law submitted by defendants. As a result, he allowed defendants an offset of $94,547.56 against the partial summary judgment previously awarded plaintiff, giving plaintiff a net judgment of $20,602. The chancellor thereafter granted plaintiff's motion to alter or amend the judgment and ordered a new trial. At the second trial, the chancellor excluded certain of defendant's evidence that had been excluded in the first trial. The chancellor awarded plaintiff a judgment against defendants in the amount of $114,547.96, the amount of the previously awarded partial summary judgment (reduced by the agreed upon amount of defendant's counterclaim of $2,825.94), along with attorney fees in the amount of $22,072.72, and prejudgment interest in the amount of $23,864.15. This appeal followed.

## I. THE SUMMARY JUDGMENT ISSUE

In *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993), our supreme court reviewed and restated certain basic principles governing the use of summary judgment:

1. The summary judgment process is designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no genuine dispute regarding material facts.

2. This procedure was implemented to enable the courts to pierce the pleadings to determine whether the case justifies the time and expense for trial.

3. A motion for summary judgment goes directly to the merits of of the litigation, and a party faced with such a motion may neither ignore it or treat it lightly.

4. Summary judgment is not a disfavored procedural short cut, but rather an important vehicle for concluding cases that can and should be resolved on legal issues alone.

Plaintiff asserted by its summary judgment motion with supporting affidavit that Tenant violated Article V of the lease by failing to make certain specified capital improvements (costing no less than $117,363) no later than 120 days from the commencement date of the lease. The existence of this failure of Tenant was documented by the Haury's affidavit.

Plaintiff also established that it had given defendants proper notice of Tenant's default

under Article V of the lease, and that the defaults had not been cured under the curative process set forth in the lease.

The capital improvement requirement set forth on Exhibit D to the lease is a defined term in Article V and specifically requires expenditures by Tenant for carpet, vinyl, painting, bedspreads, and party tables. It also provided that expenditures were to be made in the first 120 days of the lease.

In the affidavits submitted in response to this summary judgment motion, it was in no way stated or established that Tenant had expended any sums of money on these defined items identified as "Tenant's capital improvements," that the amount expended equalled or exceeded the minimum limit set forth above, or that these required costs were expended within the first 120 days of the lease.

■ The burden placed upon Tenant as the obligor under the lease, and Gulf Coast as its guarantor, is found in the *Byrd* court's restatement of the law of summary judgment:

> When the party seeking summary judgment makes a properly supported motion, the burden then shifts to the nonmoving party to set forth specific facts, not legal conclusions, by using affidavits or the discovery materials listed in Rule 56.03, establishing that there are indeed disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact and that a trial is therefore necessary. The nonmoving party may not rely upon the allegations or denials of his pleadings in carrying out this burden as mandated by Rule 56.05.

*Byrd* 847 S.W.2d at 215.

Plaintiff came forward as required by Rule 56 T.R.C.P. and defendants responded, but the response failed in any way to comply with the requirements placed upon defendants. Based upon this record, the trial court was correct in granting partial summary judgment for plaintiff in the amount stated.

## II. THE EVIDENTIARY QUESTION

Defendants stated their second issue as follows: the trial court erred in ultimately refusing to consider defendant's testimony regarding Tenant's capital improvements (additional capital improvements). Stated another way, it is defendant's contention that Tenant made certain improvements to plaintiff's property, designated "additional capital improvements," and that the chancellor should have considered these improvements when he granted plaintiff's motion for partial summary judgment. Failing that, they contend that at the trial on the remaining issues, the trial court should have considered this testimony, and awarded a setoff against the amount awarded plaintiff on summary judgment.

This position is without merit. Defendants sought to submit the very same data in the way of proof of having made capital improvements to plaintiff's property. The chancellor properly disregarded this "proof" for the reason that there was no shred of evidence that any of these "improvements" had been made during the initial 120 days, the time frame called for the making of Tenant Capital Improvements by Tenant, nor did the proof establish that the nature of these "improvements" fell under any of the five categories of Tenant's Capital Improvements as set forth in Exhibit D to the lease.

■ This issue is without merit for yet another reason. Defendants, in asking for a setoff against plaintiff's summary judgment by virtue of these expenditures, are confusing whatever their rights might have been under Article VIII of the lease as opposed to Article V of the lease, the latter dealing with the requirement to timely make the "Tenant Capital Improvements." Without going into detail, Article VIII provided that under certain conditions, certain capital improvements made by Tenant in the course of a given year could be set off against any excess rent paid to plaintiff by Tenant. Because of the breach of the lease and defendant's termination of the lease, this scenario was never reached.

■ Additional evidence of this issue's lack of merit is the fact that when defendants

sought to present this "evidence" at the January 13, 1994 trial, there was then no existing issue of controversy wherein this "evidence" would be admissible. Defendants insist that the proof was admissible under the following provision of the December 7, 1992 order of the chancellor: "That at the trial of this cause all other matters pending are to be considered by the Court." Prior to that time, plaintiff had a three part claim against defendants: (1) a claim for damages resulting from the breach of the lease by Tenant; (2) attorney fees; and (3) prejudgment interest. The aforementioned order of the chancellor disposed of the claim for damages represented by (1) above. All that remained for disposition at trial was defendants' counterclaim against plaintiff and plaintiff's claim for interest and attorney fees. The trial court was eminently correct in excluding defendants' proffered evidence at the trial. At that time, defendants' counterclaim was resolved by an agreed-upon reduction in the summary judgment of $117,363 by some $2800. At the same time, the chancellor also made his award of prejudgment interest and attorney fees.

Accordingly, the decree of the chancellor is affirmed in all respects. Costs in this cause on appeal are taxed to defendants, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.