Eugene CANNON

v.

McKENDREE VILLAGE, INC.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Sept. 10, 2008 Session.

Nov. 25, 2008.

Permission to Appeal Denied by
Supreme Court June 1, 2009.

Dan R. Alexander, Nashville, Tennessee, for the Appellant, Eugene Cannon, individually and as Executor of the Estate of Lou Dora Scruggs Cannon.

Thomas Pinckney and Susan D. Bass, Nashville, Tennessee, for the Appellee, McKendree Village, Inc.

## OPINION

SHARON G. LEE, Sp. J., delivered the opinion of the court, in which D. MICHAEL SWINEY and FRANK G. CLEMENT, JR., JJ., joined.

The plaintiff Eugene Cannon brought this action against the nursing home after his mother, an elderly resident who was suffering from dementia and Alzheimer's disease, fell from the foot of her bed in the middle of the night. The plaintiff appeals the trial court's grant of summary judgment in favor of the defendant. After careful review, we hold that the plaintiff's claim is governed by the Tennessee Medical Malpractice Act, and because the plaintiff failed to respond to the defendant's properly supported motion for summary judgment by presenting expert medical proof, summary judgment in the defendant's favor was warranted. We also affirm the trial court's ruling that the res ipsa loquitur doctrine was inapplicable because Mr. Cannon failed to demonstrate that the injury complained of was one that does not ordinarily occur in the absence of negligence.

### I. Background

Lou Dora Scruggs Cannon was admitted to McKendree Village ("McKendree"), a nursing home facility, on May 29, 2003. Ms. Cannon was then 88 years old and suffering from Alzheimer's disease and dementia. Due to Ms. Cannon's advanced age and mental condition, she was known to be at high risk for falling at the time of her admission. Ms. Cannon was under the medical care of Dr. Deborah Robin,

McKendree's medical director, while at McKendree Village. After Ms. Cannon apparently fell out of her bed on June 27, 2003, without suffering injury, Dr. Robin ordered that Ms. Cannon's bed be set at the lowest mattress level and pushed against the wall and that a half side railing be raised on the bed to prevent falls.

At approximately 2:30 AM on July 7, 2003, McKendree nursing staff discovered Ms. Cannon on the floor at the foot of her bed. She suffered a cut over one eyebrow and bruising to her face as a result of the apparent fall from the foot of the bed. Dr. Robin examined and treated Ms. Cannon for her cut and bruises the next day.

On May 17, 2004, Eugene Cannon, Ms. Cannon's son, filed this action individually and as executor of her estate,[1] against McKendree alleging negligence including negligent supervision and abuse or neglect as defined by the Tennessee Adult Protection Act, Tenn.Code Ann. § 71–6–101 et seq. After taking a voluntary nonsuit, Mr. Cannon, acting pro se, refiled his complaint on November 13, 2006. McKendree answered and filed a motion for summary judgment, arguing that it did not deviate from the standard of professional nursing home practice and that it did not cause or contribute to Ms. Cannon's injuries. In support of its motion, McKendree relied on the affidavits of several members of the nursing staff, including its Director of Nursing, and the deposition testimony of Dr. Robin, all of which was to the effect that McKendree complied with the applicable standard of care for nursing home facilities in its care and treatment of Ms. Cannon.

In his response to McKendree's motion for summary judgment, Mr. Cannon as-

---

1. The complaint states that Ms. Cannon died on January 16, 2004. No further details are included in the record about her death, and it has not been alleged that her death was caused by an act or omission of the defendant.

serted that "he can prove the allegation of the complaint by the doctrine of *res ipsa loquitur* and by proof of negligence other than expert medical testimony." Mr. Cannon, who did not introduce any medical expert testimony in his opposition to the motion for summary judgment, conceded in his response that "if this Court concludes that the Plaintiff cannot prove, through any set of facts, a negligen[ce] action absent expert medical proof, the Court should find for the Movant."

After a hearing, the trial court held that the issue of whether McKendree breached a duty to protect Ms. Cannon from a fall out of bed was governed by the Tennessee Medical Malpractice Act ("TMMA"), Tenn. Code Ann. § 29–26–115 et seq., and stated that "this Court cannot agree that ordinary lay persons have common everyday experience with amendments to plans of care, appropriate uses of restraints and causes of bruising upon an elderly Alzheimer's patient." The trial court essentially held that McKendree's expert affidavit and deposition testimony, coupled with Mr. Cannon's failure to provide expert medical testimony, negated the elements of breach of duty and causation, thereby making summary judgment to McKendree appropriate. Regarding the Tennessee Adult Protection Act ("TAPA") claim, the trial court held that "by its own terms the TAPA does not allow a civil action for compensatory damages for causes of action governed solely by [the TMMA]."

Regarding Mr. Cannon's argument that the *res ipsa loquitur* doctrine could be applied to create a genuine issue of material fact on the breach of duty and causation issues in the absence of any medical expert testimony, the trial court held as follows:

> The use of the common law doctrine of *res ipsa loquitur* is recognized in the TMMA and this doctrine is found at T.C.A. § 29–26–115(c). To prove a *res ipsa loquitur* case under TMMA the Plaintiff must prove both that the instrumentality causing the injury was in the Defendant's *exclusive* control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence. . . . [Mr. Cannon] does not assert what instrumentality caused injury to [Ms. Cannon] nor does [he] address the second requirement, that the accident or injury would not have occurred in the absence of negligence. Accordingly, Plaintiff's complaint fails on both requirements in that there is neither proof that the *instrumentality* was under the Defendant's control nor that the accident or injury would not occur in the absence of negligence.

(Emphasis in original; internal citation omitted). The trial court granted McKendree summary judgment and dismissed Mr. Cannon's action.

## II. Issue

Mr. Cannon appeals, raising the issue of whether the trial court erred in granting McKendree summary judgment, based on its holding that the TMMA applies to his negligence claim and that the lack of expert medical testimony establishing breach of the applicable standard of care and causation was fatal to his case.

## III. Analysis

### A. Standard of Review

Summary judgments enable courts to conclude cases that can and should be resolved on dispositive legal issues. *See Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993); *Airport Props. Ltd. v. Gulf Coast Dev., Inc.,* 900 S.W.2d 695, 697 (Tenn.Ct. App.1995). They are appropriate only when the facts material to the dispositive legal issues are undisputed. Accordingly, summary judgment should not be used to

resolve factual disputes or to determine the factual inferences that should be drawn from the evidence when those inferences are in dispute. *See Bellamy v. Fed. Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988).

Our task on appeal is to review the record to determine whether the requirements for granting summary judgment have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn.1997); *Aghili v. Saadatnejadi*, 958 S.W.2d 784, 787 (Tenn. Ct.App.1997). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd*, 847 S.W.2d at 210; and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn.1993). A moving party seeking a summary judgment must demonstrate the absence of any genuine and material factual issues and that the moving party is entitled to a judgment as a matter of law. *Byrd*, 847 S.W.2d at 214.

The moving party may make the required showing and shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1 (Tenn.2008) When the party seeking summary judgment has made a properly supported motion, the burden shifts to the non-moving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd* 847 S.W.2d at 215; *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). The non-moving party may not simply rest

upon the pleadings, but must offer proof by affidavits or other discovery materials (depositions, answers to interrogatories, and admissions on file) provided by Rule 56.06 showing that there is a genuine issue for trial. If the non-moving party does not so respond, then summary judgment, if appropriate, shall be entered against the non-moving party. Tenn. R. Civ. P. 56.06.

Summary judgments do not enjoy a presumption of correctness on appeal. *See Nelson v. Martin*, 958 S.W.2d 643, 646 (Tenn.1997); *City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn.1997). Accordingly, when we review a summary judgment, we view all the evidence in the light most favorable to the non-movant, and we resolve all factual inferences in the non-movant's favor. *See Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn.1999); *Muhlheim v. Knox County Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn.1999). A summary judgment will be upheld only when the undisputed facts reasonably support one conclusion-that the moving party is entitled to a judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn.1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995).

### B. Applicability of Medical Malpractice Act

■ As already stated, McKendree employees found Ms. Cannon lying on the floor at the foot of her bed in the middle of the night with a cut and bruises on her face. The essence of Mr. Cannon's complaint is that McKendree breached a duty to prevent Ms. Cannon from falling, and that McKendree should have more thoroughly restrained her in bed. As noted, McKendree offered expert medical testimony that it complied with the applicable standard of care required of professional nursing home facilities in its care of Ms. Cannon. Dr. Robin testified that the deci-

sion to impose bodily restraints, either chemical or physical, on elderly patients with Alzheimer's and dementia is a decision that only a medical doctor was allowed to make. Dr. Robin stated that her decision to have a half-rail put up on Ms. Cannon's bed to prevent her rolling off the side was warranted by the circumstances and that the imposition of more restrictive bodily restraints upon elderly patients such as Ms. Cannon carried its own set of risks to the patient and was unwarranted in Ms. Cannon's case. The trial court found that expert medical testimony regarding the appropriate standard of care in deciding whether to restrain Ms. Cannon in bed, and whether McKendree complied with that standard, was required by the TMMA in this case.

The TMMA requires expert proof in a medical negligence action to establish certain elements of a plaintiff's malpractice claim, providing in pertinent part as follows:

(a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred.

Tenn.Code Ann. § 29–26–115. However, our courts have recognized and held that "[c]ases involving health or medical entities do not automatically fall within the medical malpractice statute." *Draper v. Westerfield*, 181 S.W.3d 283, 290 (Tenn. 2005). The *Draper* Court restated the test as follows:

[I]n determining whether an action is for medical malpractice or for common law negligence, the issue is whether the alleged negligent conduct "bears a substantial relationship to the rendition of medical treatment by a medical professional." [*Gunter v. Lab. Corp. of America*, 121 S.W.3d 636, 641 (Tenn.2003)]. If so, the medical malpractice statute applies. *Id.* If, however, the plaintiff seeks compensation for injuries resulting from negligent conduct not affecting a patient's medical treatment, the claim falls under common law negligence. *Id.* at 640.

*Id.* at 291.

This court has observed as follows in distinguishing between a medical malpractice action and an action for ordinary common law negligence:

Medical malpractice cases typically involve a medical diagnosis, treatment or other scientific matters. The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter

of medical science or art requiring specialized skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of fact.

*Peete v. Shelby County Health Care Corp.,* 938 S.W.2d 693, 696 (Tenn.Ct.App.1996); *accord Turner v. Steriltek, Inc.,* No. M2006–01816–COA–R3–CV, 2007 WL 4523157, at *4 (Tenn. Ct.App. M.S., filed Dec. 20, 2007); *Conley v. Life Care Ctrs. of America, Inc.,* 236 S.W.3d 713, 729–30 (Tenn.Ct.App.2007). As we noted in *Conley,* "to the extent the act or omission complained of could be assessed by the trier of fact based on common everyday experiences, it would not fall within the scope of the [T]MMA." *Conley,* 236 S.W.3d at 729.

In the present case, we are of the opinion that the trial court correctly held that the act or omission complained of here, the decision not to restrain Ms. Cannon in her bed by physical or chemical means, was one that involves a matter of medical science or art requiring skills not ordinarily possessed by lay persons. The undisputed testimony of several of McKendree's witnesses, including Dr. Robin, that only a medical doctor had the authority to order a patient or resident to be restrained, supports this conclusion. It is apparent that such a decision requires specialized knowledge regarding the mental capacity and proclivities of such a patient in order to apply the complicated risk/benefit analysis required, in light of the fact that physically or chemically restraining a patient in bed also exposes him or her to medical risk. Thus, the TMMA applies to Mr. Cannon's claim. McKendree, the moving party, affirmatively negated an essential element of Mr. Cannon's claim by submitting expert medical testimony that it complied with and did not deviate from the applicable standard of care required of professional nursing home facilities. At this point, the burden of proof shifted to Mr. Cannon to set forth specific facts, by means of expert medical testimony as required by the TMMA, establishing the existence of disputed, material facts regarding these elements of his claim that must be resolved by the trier of fact, which Mr. Cannon failed to do. Therefore, we affirm the trial court's judgment that the TMMA required Mr. Cannon to establish, by medical expert testimony, the recognized standard of acceptable professional nursing home and/or medical practice and that McKendree acted with less than or failed to act with ordinary and reasonable care in accordance with the standard; and that his failure to do so entitles McKendree to judgment as a matter of law.

To the extent that Mr. Cannon's complaint could be construed as one for negligent supervision, we note that he has not alleged nor argued that the McKendree nursing staff took an unreasonably long time between supervisory checks on the residents or that they should have discovered Ms. Cannon's fall sooner. The nursing staff testified that McKendree's policy was to check the residents every two hours to make sure they were all right during the night and that this procedure was followed the night of Ms. Cannon's fall. Again, Mr. Cannon provided no evidence by expert testimony or otherwise to contradict McKendree's expert testimony that the staff's supervision in this regard was in keeping with the appropriate standard of nursing home care.

### C. Tennessee Adult Protection Act Claim

■ The TAPA, Tenn.Code Ann. § 71–6–101 et seq., provides a cause of action for "abuse or neglect" of an adult, defined as "the infliction of physical pain, injury, or mental anguish, or the deprivation of ser-

vices by a caretaker that are necessary to maintain the health and welfare of an adult or a situation in which an adult is unable to provide or obtain the services that are necessary to maintain that person's health or welfare." Tenn.Code Ann. § 71–6–102(1). As the trial court noted, however, the TAPA explicitly provides that it "shall not apply to a cause of action within the scope of title 29, chapter 26; such cause of action shall be governed solely by title 29, chapter 26," the TMMA. Tenn.Code Ann. § 71–6–120(g). Under the express terms of the TAPA, therefore, the trial court's holding was correct that because Mr. Cannon's claim sounds in malpractice, the TMMA provides his exclusive remedy. *See Conley*, 236 S.W.3d at 731.

### D. Res Ipsa Loquitur

■ Mr. Cannon argues that the application of the *res ipsa loquitur* doctrine should save his case from summary judgment notwithstanding the absence of medical expert testimony. We do not agree. In the case of *Seavers v. Methodist Med. Ctr. of Oak Ridge*, the Tennessee Supreme Court discussed at length the *res ipsa loquitur* doctrine in the context of a medical malpractice action, providing the following guidance:

> Under Tennessee law, res ipsa loquitur is a form of circumstantial evidence that permits, but does not compel, a jury to infer negligence from the circumstances of an injury. *Poor Sisters of St. Francis [v. Long]*, 230 S.W.2d [659] at 663 [ (Tenn.1950) ]; *Lewis v. Casenburg*, 157 Tenn. 187, 7 S.W.2d 808, 811 (1928); *Armes v. Hulett*, 843 S.W.2d 427, 432 (Tenn.Ct.App.1992). The doctrine of res ipsa loquitur has traditionally been available in cases where direct evidence of a defendant's negligence is either inaccessible to or unknown by the plaintiff. *Provident Life & Accident Ins. Co. v. Professional Cleaning Serv.*, 217 Tenn.

199, 396 S.W.2d 351, 356 (1965); 57B Am.Jur.2d *Negligence* § 1920 (1989). The doctrine does not dispense with the plaintiff's burden of proof, but it merely allows an inference of negligence where the jury has a common knowledge or understanding that events which resulted in the plaintiff's injury do not ordinarily occur unless someone was negligent. *Summit Hill Assoc. v. Knoxville Util. Bd.*, 667 S.W.2d 91, 96 (Tenn.Ct. App.1983); *Oliver v. Union Transfer Co.*, 17 Tenn.App. 694, 71 S.W.2d 478, 480 (1934); 57B Am.Jur.2d *Negligence* § 1920 (1989).

\* \* \*

The jury may not presume negligence from the fact of an injury alone. Tenn. Code Ann. § 29–26–115(d) (Supp.1999); *Johnson v. Lawrence*, 720 S.W.2d 50, 56 (Tenn.Ct.App.1986). The plaintiff has the burden of showing circumstances from which the jury might reasonably conclude that the defendant was negligent. *Summit Hill Assoc.*, 667 S.W.2d at 96; [*Johnson v.*] *Ely*, [30 Tenn.App. 294] 205 S.W.2d [759] at 762 [ (1947) ]. *The plaintiff must demonstrate that he or she was injured by an instrumentality that was within the defendant's exclusive control and that the injury would not ordinarily have occurred in the absence of negligence.* *Provident Life & Accident Ins. Co.*, 396 S.W.2d at 354–55; *Sullivan v. Crabtree*, 36 Tenn.App. 469, 473, 258 S.W.2d 782, 784 (1953).

The doctrine of res ipsa loquitur has been applied in a variety of negligence actions, and in the context of medical malpractice, has been recognized both by the common law and by our General Assembly.

\* \* \*

The limited use of res ipsa loquitur in medical malpractice cases has remained

the law in Tennessee even with the enactment of the Medical Malpractice Review Board and Claims Act of 1975. Tenn.Code Ann. §§ 29–26–101 to –121 (1980 & Supp.1999). The Act clarified the common law by requiring all medical malpractice claimants to carry the burden of proving (1) the recognized standard of professional care, (2) that the defendant failed to act in accordance with the applicable standard of care, and (3) that as a proximate result of the defendant's negligent act or omission, the claimant suffered an injury which otherwise would not have occurred. *Id.* § 29–26–115(a).

\* \* \*

Pertaining to the doctrine of res ipsa loquitur, the Act essentially codified the common law. Section–115(c) reads in pertinent part:

> In a malpractice action as described in subsection (a) of this section there shall be no presumption of negligence on the part of the defendant. Provided, however, there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control *and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.*

*Id.* § 29–26–115(c).

*Seavers v. Methodist Med. Ctr. Of Oak Ridge,* 9 S.W.3d 86, 91–93 (Tenn.1999) (Emphasis added; footnotes omitted). As is evident from the Court's language in *Seavers,* the application of *res ipsa loquitur* doctrine, both at common law and as codified by the TMMA, requires a demonstration by the plaintiff that, among other things, the injury was one which ordinarily does not occur in the absence of negligence. *Id.; see also Burton v. Warren*

*Farmers Coop.,* 129 S.W.3d 513, 525 (Tenn. Ct.App.2002); *Brown v. Univ. Nursing Home, Inc.,* 496 S.W.2d 503, 509 (Tenn.Ct. App.1972).

In the present case, Mr. Cannon has not demonstrated that a fall from bed by an elderly patient suffering from dementia and Alzheimer's disease is an injury that ordinarily does not occur in the absence of negligence. In the *Brown* case, the Court of Appeals stated the following when presented with the issue of the applicability of the *res ipsa* doctrine under similar circumstances:

> In view of the fact that the doctrine has no application unless the accident in question is one of a kind which ordinarily does not occur in the absence of negligence, *Walls v. Lueking,* 46 Tenn.App. 636, 332 S.W.2d 692 [ (1959) ], and since the Court judicially knows that the fall of an elderly person does not necessarily result alone from the negligence of another but may occur under circumstances when there is a complete absence of negligence on the part of any third party, or even of the injured party, we think the Court correctly held that the doctrine of res ipsa loquitur does not apply in the case at bar.

*Brown,* 496 S.W.2d at 509.

In summary, Mr. Cannon's complaint and response to McKendree's motion for summary judgment essentially rely on the fact of the occurrence of the injury alone, making his claim an attempt at the imposition of strict liability. The *res ipsa loquitur* doctrine does not apply under these circumstances, and we cannot countenance a result that would make nursing homes insurers of the welfare of their residents. As the *Brown* case notes, accidental falls, though unfortunate, do happen in the absence of negligence. The trial court was therefore correct in holding the *res ipsa*

doctrine inapplicable under the facts of this case.

### IV. Conclusion

The summary judgment of the trial court in McKendree's favor is affirmed. Costs on appeal are assessed to the Appellant, Eugene Cannon, individually and as Executor of the Estate of Lou Dora Scruggs Cannon.