FILED

02/15/2019

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 10, 2019 Session

## UNITTA SUE NEWMAN v. STATE OF TENNESSEE

Appeal from the Tennessee Claims Commission
No. T20150375      Robert N. Hibbett, Commissioner

_____

No. M2018-00948-COA-R3-CV
_____

A patient in a state psychiatric facility was killed by another patient. The surviving spouse of the deceased patient brought suit against the State and was awarded damages for the wrongful death of her husband. Because the Tennessee Health Care Liability Act applies to the surviving spouse's claim, and because she failed to comply with the Act's requirements of pre-suit notice and good faith certification, we must reverse the decision of the Claims Commission.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KENNY W. ARMSTRONG, J., joined.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, Stephanie Renee Reevers, Deputy Attorney General, and Stephanie A. Bergmeyer, Senior Assistant Attorney General, for the appellant, State of Tennessee.

Sheri S. Phillips, Clarksville, Tennessee, for the appellee, Unitta Sue Newman.

## OPINION

Billy Joe Newman, age 67, was admitted as a patient to Middle Tennessee Mental Health Institute ("MTMHI") on July 23, 2013, with depression and dementia. On August 4, 2013, Mr. Newman was attacked by another patient, Kevin Beazley, age 22. Mr. Newman died nine days later from the injuries he sustained during this attack. Mr. Beazley was admitted to MTMHI in early May 2013, after being tried for attempted first degree murder and found not guilty by reason of insanity. His diagnoses on admission

were paranoid schizophrenia and mild mental retardation; he was noted to have a history of violent and unpredictable behavior.[1]

On August 4, 2014, Unitta Sue Newman, Mr. Newman's surviving spouse, filed suit against the State of Tennessee (MTMHI) in the Division of Claims Administration. Mrs. Newman's complaint includes the following allegations:

6. That on or about August 4, 2013, the deceased, Billy Joe Newman, was a patient at MTMHI and was to be monitored one on one at the facility. That during his stay at MTMHI, he was to have the assistance of a wheel chair for ambulation, however, he was not provided with same by the Defendant;

7. That on or about August 4, 2013, Kevin Beazley was a patient at MTMHI and was also to be monitored one on one at the facility. Kevin Beazley was a known criminal and known to be extremely violent without provocation;

8. That on or about August 4, 2013, the staff at MTMHI allowed Kevin Beazley to roam about the general population without supervision from a staff member. At the same time and place, Billy Newman was made to stand in line to retrieve his medication without supervision or the assistance of his wheel chair in the general population of the premises of MTMHI;

9. [Description of the attack.]

10. That during the attack referenced above, the staff and employees of MTMHI failed to assist Billy Joe Newman and allowed him to lay on the floor until an ambulance arrived. Further, the staff and employees of MTMHI failed to secure or restrain Kevin Beazley when he was violently attacking Billy Joe Newman;

. . . .

12. That the Defendant had previously received complaints regarding the supervision of their patients; had, prior to August 4, 2013, received complaints and information that Kevin Beazley was a dangerous person and was violent towards others without provocation; that they allowed Kevin Beazley to roam about the facility knowing that he was a danger to others; and, that the acts complained of herein were foreseeable;

---

[1] Mr. Beazley had been a patient at MTMHI on previous occasions.

13. That Kevin Beazley had previously been a patient at MTMHI for violent attacks against others, therefore, MTMHI had prior knowledge of his violent tendencies;

14. That the conduct referenced above was observed by the administration and other employees of MTMHI, who had a duty to report this conduct and failed to do so or to take measures to protect their patients;

15. That the Plaintiff would submit that it was "common knowledge" or suspected by the administration and employees of MTMHI that Kevin Beazley was dangerous and would attack without provocation, therefore, it was foreseeable that this incident would occur without separating Kevin Beazley from other patients. That the harm of Billy Joe Newman was foreseeable;

16. That the acts complained of herein and the injuries/death of Billy Joe Newman were foreseeable to MTMHI given the prior complaints and conduct referenced herein;

17. That the Defendants had actual knowledge prior to August 4, 2013 that Kevin Beazley was dangerous, however, they failed to follow the appropriate rules and regulations in place to protect others;

18. That the administration and employees present at MTMHI were all employees/agents of the MTMHI at the time of the actions complained of herein. Billy Newman was a patient at said time under the direction of MTMHI. Therefore, the employees of the MTMHI were responsible for supervising and protecting the patients during their stay; monitoring the activities and safety of the patients; resolving any problems that they knew or should have known were taking place on the grounds and between patients; taking actions when problems or inappropriate conduct is reported; to ensure that the patients are safe; and, to provide a safe and nurturing environment for the patients;

. . . .

23. That the negligent acts and omissions of the MTMHI employees [were] the sole, legal and proximate cause of the injuries and death of Billy Joe Newman[.]

The claim was transferred to the Claims Commission.

After filing an answer setting forth its defenses, the State filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6) for failure to comply with the certificate of good faith and pre-suit notice requirements of the Tennessee Health Care Liability Act ("THCLA"), Tenn. Code Ann. §§ 29-26-121(a)(4), 122(a). Mrs. Newman thereafter filed a motion to amend her complaint to add a claim under the THCLA. The Commissioner heard the motion to dismiss and the motion to amend on November 10, 2016. In an order entered on November 15, 2016, the Commissioner denied Mrs. Newman's motion to amend the complaint. The Commissioner found, however, that Mrs. Newman's original claim was not a healthcare liability claim, but a claim for negligent care, custody and control of persons in state custody pursuant to Tenn. Code Ann. § 9-8-307(a)(1)(E). Likening the case to one in which prison officials may be found negligent for their failure to prevent an assault by an inmate upon another inmate, the Commissioner denied the State's motion to dismiss.[2]

The Claims Commission heard the case on December 5, 2017. On April 20, 2018, the Claims Commissioner entered a final judgment in favor of Mrs. Newman in the amount of $230,690.00.

Mrs. Newman filed a separate lawsuit for negligence in Davidson County circuit court against several corporations that provided nursing and medical staff to MTMHI. That case was dismissed for failure to comply with the requirements of the THCLA. *See Newman v. Guardian Healthcare Providers, Inc.*, No. M2015-01315-COA-R3-CV, 2016 WL 4069052 (Tenn. Ct. App. July 27, 2016).

The State appeals, and we summarize its issues as follows: (1) whether the Claims Commission erred in denying the State's motion to dismiss this health care liability action in which the claimant failed to comply with the notice and filing requirements of the THCLA; and (2) whether the Claims Commission erred in finding the State negligent in this health care liability action despite the absence of the expert proof required by the THCLA.

ANALYSIS

The first issue is whether the Commissioner erred in denying the State's motion to dismiss based upon Mrs. Newman's failure to comply with the THCLA's requirements of pre-suit notice and certificate of good faith. For the reasons discussed below, we conclude that this issue is dispositive in this case. We must, therefore, reverse the decision of the Commissioner.

---

[2] The State filed a motion seeking permission for an interlocutory appeal pursuant to Tenn. R. App. P. 9. The Claims Commission denied the motion.

Our Supreme Court has held that "the proper way to challenge a plaintiff's compliance with the health care liability notice requirements is through a motion to dismiss." *Estate of Bradley v. Hamilton Cnty.*, No. E2014-02215-COA-R3-CV, 2015 WL 9946266, at *3 (Tenn. Ct. App. Aug. 21, 2015) (citing *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012)).  A party filing a motion pursuant to Tenn. R. Civ. P. 12.02(6) asserts that the plaintiff has failed to state a claim upon which relief can be granted.  The motion "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011); *see also Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 710 (Tenn. 2003). When ruling on Rule 12.02(6) motions, courts are to "'construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Webb*, 346 S.W.3d at 426 (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007)).

When a defendant files a properly-supported motion to dismiss based on the plaintiff's failure to comply with Tenn. Code Ann. §§ 29-26-121 and -122, the plaintiff must demonstrate either that he or she complied with the statutory requirements or that he or she had "extraordinary cause for failing to do so." *Myers*, 382 S.W.3d at 307. The determination of whether a complaint should be dismissed for failure to state a claim is a question of law that appellate courts review de novo, with no presumption of correctness afforded to the trial court's decision. *Foster v. Chiles*, 467 S.W.3d 911, 914 (Tenn. 2015); *Webb*, 346 S.W.3d at 426.

In the case of *Ellithorpe v. Weismark*, 479 S.W.3d 818, 824 (Tenn. 2015), our Supreme Court considered the effect of recent legislation on determining what constitutes a health care liability action.  The history and analysis in *Ellithorpe* provides important guidance for the present case.  The Court reviewed the 2008 and 2009 amendments to the Tennessee Medical Malpractice Act, including the requirement that "a party initiating a medical malpractice claim . . . give sixty days' pre-suit notice to the implicated health care providers," and the requirement that "a plaintiff filing a medical malpractice action, in which expert testimony was required, . . . file a certificate of good faith within ninety days of the filing of the initial complaint." *Ellithorpe*, 479 S.W.3d at 824-825 (citing Tenn. Code Ann. §§ 29-26-121(a)(1), -122(a) (2008)).  In *Estate of French v. Stratford House*, 333 S.W.3d 546 (Tenn. 2011), the Court addressed "the interaction between ordinary negligence principles and the Tennessee Medical Malpractice Act, as then enacted." *Ellithorpe*, 479 S.W.3d at 825.  The *Estate of French* Court set forth the following guiding principles:

> The TMMA applies only to those alleged acts that bear a substantial relationship to the rendition of medical treatment by a medical professional, or concern medical art or science, training, or expertise. If there are additional acts or omissions alleged that do not bear a substantial relationship to medical treatment, require no specialized skills, or could be

assessed by the trier of fact based upon ordinary everyday experiences, then the claims may be made under an ordinary negligence theory.

*Estate of French*, 333 S.W.3d at 557.

Four months after the Court issued its opinion in *Estate of French*, however, the legislature took action again, enacting the Tennessee Civil Justice Act of 2011, which further amended the Tennessee Medical Malpractice Act. *See* 2011 TENN. PUB. ACTS ch. 510; *Ellithorpe*, 479 S.W.3d 826. The term "medical malpractice" was replaced with "health care liability" or "health care liability action." *Ellithorpe*, 479 S.W.3d at 826 (citing 2011 TENN. PUB. ACTS ch. 510). Two important definitions were added:

(a) As used in this part, unless the context otherwise requires:

(1) "Health care liability action" means any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, *regardless of the theory of liability on which the action is based*;
. . . .

(b) Health care services to persons includes care by health care providers, which includes care by physicians, nurses, licensed practical nurses, pharmacists, pharmacy interns or pharmacy technicians under the supervision of a pharmacist, orderlies, certified nursing assistants, advance practice nurses, physician assistants, nursing technicians and other agents, employees and representatives of the provider, and also *includes staffing, custodial or basic care*, positioning, hydration and similar patient services.

Tenn. Code Ann. § 29-26-101(a)(1), (b) (emphasis added). The Supreme Court determined, in *Ellithorpe*, that its decision in *Estate of French* had been "statutorily abrogated by the Tennessee Civil Justice Act of 2011." *Ellithorpe*, 479 S.W.3d at 827.

In the case before us, Mrs. Newman does not assert that she filed pre-suit notice and a certificate of good faith in compliance with the THCLA. Her position is that the suit is one for ordinary negligence, not health care liability. In light of the definitions of "health care liability action" and "health care services" set out above, we cannot agree with Mrs. Newman's argument. In particular, Tenn. Code Ann. § 29-26-101(b), specifies that health care services includes "custodial or basic care," and Tenn. Code Ann. § 29-26-101(a)(1) states that a "health care liability action" includes "any civil action . . . related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Thus, the trial court's determination that this case involved the "care, custody and control of persons in state custody pursuant to

- 6 -

Tenn. Code Ann. § 9-8-307(a)(1)(E)," not health care liability, was based upon an overly restrictive definition of health care liability.

Although the pre-suit notice requirements of Tenn. Code Ann. § 29-26-121 apply to all THCLA actions, the good-faith-certification requirements of § 29-26-122 apply "*only* to health care liability claims requiring expert testimony." *Estate of Bradley*, 2015 WL 9946266, at *5. No expert testimony is required if "'the negligence is obvious and readily understandable by an average layperson.'" *Id.* (quoting *Smith v. Testerman*, No. E2014-00956-COA-R9-CV, 2015 WL 1118009, at *4 (Tenn. Ct. App. Mar. 10, 2015)). The courts have found this common knowledge exception applicable in cases involving "only the most obvious forms of [medical] negligence." *Ayers v. Rutherford Hosp., Inc.*, 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984); *see also Osunde v. Delta Med. Ctr.*, 505 S.W.3d 875, 886 (Tenn. Ct. App. 2016); *Graniger v. Methodist Hosp. Healthcare Sys., Inc.*, No. 02A01-9309-CV-00201, 1994 WL 496781, at *3 (Tenn. Ct. App., Sept. 9, 1994) (describing common knowledge exception cases as being "as blatant as a 'fly floating in a bowl of buttermilk' so that all mankind knows that such things are not done absent negligence") (quoting *Murphy v. Schwartz*, 739 S.W.2d 777, 778 (Tenn. Ct. App. 1986)).

We turn now to this court's analysis in the appeal of the companion case to this one—Mrs. Newman's claim in chancery court. *See Newman*, 2016 WL 4069052, at *1. After a summary of the law similar to that above, the court examined cases involving the supervision of impaired patients. *Id.* at *6-7. In *Tucker v. Metropolitan Government of Nashville and Davidson County*, 686 S.W.2d 87, 89-90 (Tenn. Ct. App. 1984), a catatonic patient who was left unrestrained on an emergency room stretcher woke up and ran away, resulting in the patient's accidental death. The court determined that "[t]he proper treatment of a patient with serious mental problems . . . and who is in a catatonic state, is not within the common knowledge of ordinary lay persons." *Id.* at 94. In *Cannon v. McKendree Village, Inc.*, 295 S.W.3d 278, 283 (Tenn. Ct. App. 2008), the court held that the decision regarding whether to restrain a patient with dementia was "a matter of medical science or art requiring skills not ordinarily possessed by lay persons" and that "such a decision requires specialized knowledge regarding the mental capacity and proclivities of such a patient."

The last case examined by this court in the companion appeal was *Turner v. Jordan*, 957 S.W.2d 815 (Tenn. 1997). Although the main issue in *Turner* was not the common knowledge exception, but a psychiatrist's duty of care to protect a nurse from a violent, mentally ill patient, this court inferred from the higher court's discussion that "a trier of fact must be informed of 'accepted standards of the profession' when determining the liability of a defendant" and that "[t]his is a matter requiring expert testimony, clearly beyond the common knowledge of the average layperson." *Newman*, 2016 WL 4069052, at *7. We concluded in the companion appeal that all of the cases discussed supported our conclusion that "when the issue of negligence involves 'the mental capacity and

proclivities of" a psychiatric patient, expert testimony is required." *Id.* (quoting *Cannon*, 295 S.W.3d at 283).

The facts in the present case are the same as those we considered in the companion appeal. Although this case involves a different defendant, the THCLA applies just as it did in the companion case. We believe the reasoning applied in the previous appeal also applies here:

> [P]laintiff's allegations involve matters that are not within the common knowledge of an ordinary person—matters involving the mental and physical capacities of both the attacking patient and the decedent. As the trial court correctly noted, the question of whether and how to restrain and/or supervise a potentially dangerous mental patient involves knowledge and understanding of his diagnosis and medical history. Plaintiff argues that the physician's orders to supervise the attacker Beazley on a "one-on-one" basis were already in place, and the alleged negligence was simply a failure to carry out those orders. Nevertheless, we believe the issue of whether defendants' agents, all of whom are professional health care providers, were negligent under the circumstances still requires an expert to inform the trier of fact of the standard of professional care of these mental patients in a psychiatric hospital setting. Consequently, Tenn. Code Ann. § 29-26-122 requires the filing of a certificate of good faith with the complaint. Failure to do so results in a dismissal with prejudice, as discussed above.

*Newman*, 2016 WL 4069052, at *7. Moreover, Mrs. Newman failed to file pre-suit notice as required by Tenn. Code Ann. § 29-26-121.

Because Mrs. Newman's claim is a health care liability action and she failed to comply with the THCLA, the Commissioner erred in failing to grant the State's motion to dismiss. *See Ellithorpe*, 479 S.W.3d at 828-29 (holding that the appropriate sanction for failure to comply with the pre-suit notice requirement is dismissal without prejudice; but for failure to comply with the good faith certificate requirement, dismissal with prejudice is the proper result). The State's second issue is pretermitted.

CONCLUSION

The judgment of the Claims Commission is reversed, and this matter is remanded with costs of appeal assessed against the appellee, Unitta Sue Newman, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE