# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 22, 2016 Session

## UNITTA SUE NEWMAN v. GUARDIAN HEALTHCARE PROVIDERS, INC. ET AL.

### Appeal from the Circuit Court for Davidson County
### No. 14C3186      Amanda J. McClendon, Judge

---

### No. M2015-01315-COA-R3-CV – Filed July 27, 2016

---

On August 4, 2013, Kevin Beazley, a resident at Middle Tennessee Mental Health Institute (MTMHI), attacked Billy Joe Newman, another patient and resident, causing injuries that resulted in Newman's death. His widow, Unitta Sue Newman (plaintiff), brought this action against several corporations (defendants) that provided nursing and medical staff to MTMHI. The trial court dismissed the complaint with prejudice, on the grounds that it was governed by the Tennessee Health Care Liability Act (THCLA), and plaintiff did not comply with either the pre-suit notice requirement of Tenn. Code Ann. § 29-26-121 (Supp. 2015), or the certificate of good faith requirement of § 29-26-122 (2012). Plaintiff argues that the allegations of her complaint fall under the "common knowledge" exception to the general rule requiring expert testimony to establish medical negligence, and, thus, she was not required to file a certificate of good faith. She asserts that the trial court should have dismissed her complaint without prejudice. Because plaintiff's negligence claims involve matters of professsional medical knowledge, judgment, and treatment not within the common knowledge of ordinary lay persons, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT and JOHN W. MCCLARTY, JJ., joined.

Sheri S. Phillips, Clarksville, Tennessee, for the appellant, Unitta Sue Newman.

William B. Jakes, III, and William B. Jakes, IV, Nashville, Tennessee, for the appellee, Guardian Health Care Providers, Inc.

James E. Looper, Jr., Jennifer M. Eberle, and Heather D. Piper, Nashville, Tennessee, for the appellee, Allpro Staffnet, LLC.

Minton P. Mayer, Memphis, Tennessee, for the appellee, Milestone Staffing Services, LLC.

**OPINION**

**I.**

Plaintiff brought this action against Guardian Health Care Providers, Inc., Allpro Staffnet, LLC, and Milestone Staffing Services, LLC. These defendants provided nursing and medical staff to MTMHI, which the trial court found is "strictly a psychiatric facility." According to the allegations of the complaint,

> [O]n or about August 4, 2013, the deceased, Billy Joe Newman, was a patient at MTMHI and was to be monitored one on one at the facility. [D]uring his stay at MTMHI, he was to have the assistance of a wheel chair for ambulation, however, he was not provided with same by the Defendants;
>
> . . . Kevin Beazley was a patient at MTMHI and was also to be monitored one on one at the facility. Kevin Beazley was a known criminal and known to be extremely violent without provocation;
>
> [T]he staff of the Defendants working within MTMHI allowed Kevin Beazley to roam about the general population without supervision from a staff member. At the same time and place, Billy Newman was made to stand in line to retrieve his medication without supervision or the assistance of his wheel chair in the general population of the premises of MTMHI;
>
> . . . Kevin Beazley, without provocation, violently attacked Billy Joe Newman, causing life ending injuries to Mr. Newman. His actions were willful, intentional and without regard for human life and constitute an intentional tort;
>
> [D]uring the attack referenced above, the staff and employees of the Defendants, Guardian, Allpro and Milestone, failed to

2

assist Billy Joe Newman and allowed him to lay on the floor until an ambulance arrived. Further, the staff and employees of the Defendants . . . failed to secure or restrain Kevin Beazley when he was violently attacking Billy Joe Newman;

[T]he above situation was created and maintained by the employees, agents and servants of the Defendants . . . therefore, all acts complained of herein are imputed to their respective employers/Defendants;

Defendants . . . had previously received complaints regarding the supervision of their patients; had, prior to August 4, 2013, received complaints and information that Kevin Beazley was a dangerous person and was violent towards others without provocation; [and] they allowed Kevin Beazley to roam about the facility knowing that he was a danger to others; and, that the acts complained of herein were foreseeable;

Kevin Beazley had previously been a patient at MTMHI under the care of the Defendants, Guardian, Allpro and Milestone, for violent attacks against others, therefore, these Defendants had prior knowledge of his violent tendencies;

[T]he conduct referenced above was observed by the administration and other employees of the Defendants, . . . who had a duty to report this conduct and failed to do so or to take measures to protect their patients;

[T]he Plaintiff would submit that it was "common knowledge" or suspected by the administration and employees of the Defendants . . . that Kevin Beazley was dangerous and would attack without provocation, therefore, it was foreseeable that this incident would occur without separating Kevin Beazley from other patients. That the harm of Billy Joe Newman was foreseeable[.]

\* \* \*

[T]he employees/agents of the Defendants . . . had a duty under the law and pursuant to their Rules and Regulations to take action when they received a complaint of inappropriate

3

or violent conduct of patients and that they failed to take action when problems and complaints were reported to them regarding Kevin Beazley, therefore, their conduct endangered the safety and well being of Billy Newman causing his ultimate death on August 13, 2013;

[T]he administration and employees of the Defendants . . . failed to take any action when the conduct referenced herein was reported to them, or when they witnessed or suspected this inappropriate or violent conduct was occurring, therefore, their actions and omissions were negligent and in violation of the rules and regulations in effect for protecting patients and maintaining the safety of other patients;

Further, the employees of the Defendants . . . were negligent in that they failed to take action prior to August 4, 2013 when complaints and conduct was evident regarding the inappropriate or violent behavior of Mr. Beazley when this conduct was reported to them on numerous occasions; they failed to protect their patients; they failed to follow the rules and regulations in place for handling reported conduct, such as the conduct mentioned herein; they failed to take action against Mr. Beazley or seclude him from other patients when it was reported to them and was evident to them that his conduct was inappropriate, violent and dangerous; and, they failed to provide a safe environment for its patients when [they] had an absolute duty to do so[.]

(Numbering in original omitted.)

The defendants filed a motion to dismiss the complaint for plaintiff's failure to comply with Tenn. Code Ann. § 29-26-121, which requires that a plaintiff "asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint," and Tenn. Code Ann. § 29-26-122, which mandates that "[i]n any health care liability action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint." Plaintiff responded with the argument that she was not required to provide expert testimony establishing a deviation from the professional standard of care, because her allegations involved claims of ordinary negligence that could be readily understood and evaluated by an ordinary layperson, based on common knowledge.

The trial court dismissed the complaint, finding that it "alleges negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional. Thus, all provisions of the health care liability act are applicable." The trial court further stated,

> Because of their psychiatric diagnoses, both Mr. Beazley and Mr. Newman needed ongoing, skilled supervision. In the case of a psychiatric patient, it can be much more difficult to determine what constitutes basic care and what requires more specialized medical skills.

> \* \* \*

> These allegations concerning the failure to take action against and properly seclude a psychiatric patient involve questions of professional medical management and not issues of ordinary negligence that can be judged by the common knowledge and experience of a jury. "The ordinary layman does not know the type of supervision or monitoring that is required of psychiatric patients in a psychiatric ward." ***Dorris v. Detroit Osteopathic Hosp. Corp.***, 594 N.W.2d 455 (Mich. 1999).

> \* \* \*

> Mr. Beazley and Mr. Newman were patients in a psychiatric hospital and something about their respective conditions required a certain amount of supervision. Supervision of a psychiatric patient is an ongoing process that requires medical knowledge and skill.

The trial court concluded that plaintiff "has shown no allegation of an act or omission separate and distinct from the alleged acts or omissions this Court has found to be within the scope of the [THCLA]." Plaintiff timely filed a notice of appeal.

5

**II.**

The issue presented by plaintiff is whether the trial court erred in dismissing her complaint with prejudice based on her failure to file a certificate of good faith with her complaint, as required by the THCLA.[1]

**III.**

As this Court has recently observed,

> The Tennessee Supreme Court has previously held that the proper way to challenge a plaintiff's compliance with the health care liability notice requirements is through a motion to dismiss. *Myers v. AMISUB (SFH), Inc*., 382 S.W.3d 300, 307 (Tenn. 2012). "A complaint is subject to dismissal under rule 12.02(6) for failure to state a claim if an affirmative defense clearly and unequivocally appears on the face of the complaint." *Wilson v. Harris*, 304 S.W.3d 824, 826 (Tenn. Ct. App. 2009) (citing *Anthony v. Tidwell*, 560 S.W.2d 908, 909 (Tenn. 1977)). "In considering a motion to dismiss, courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Stewart v. Schofield*, 368 S.W.3d 457, 462 (Tenn. 2012). "A motion to dismiss should be granted only if 'it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.' " *Cartwright v. DMC–Memphis, Inc.*, No. W2013-01614-COA-R3-CV, 2014 WL 6908420[,] at *3 (Tenn. Ct. App. 2014) (citing *Cullum v. McCool*, 432 S.W.3d 829, 832 (Tenn. 2013)). When reviewing a lower court's decision on a 12.02(6) motion to dismiss, the issues raised on such motion involve questions of law and will be reviewed de novo with no presumption of correctness. *Winchester v. Little*, 996 S.W.2d 818 (Tenn. Ct. App. 1998).

---

[1] Plaintiff argued at trial and in her brief that her action was one for ordinary negligence, and not health care liability, relying in large part upon the principles espoused in *Estate of French v. Stratford House*, 333 S.W.3d 546 (Tenn. 2011). Two days after plaintiff filed her appellate brief, however, the Supreme Court issued its opinion in *Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015), which ruled that *Estate of French* had been statutorily abrogated. During oral argument, plaintiff's counsel recognized this development in the law and stated her position that the complaint should have been dismissed without prejudice.

***Estate of Bradley v. Hamilton Cnty.***, No. E2014-02215-COA-R3-CV, 2015 WL 9946266, at \*3 (Tenn. Ct. App., filed Aug. 21, 2015).

**IV.**

There is no dispute that plaintiff did not timely provide defendants with pre-suit notice or file a certificate of good faith with her complaint. Dismissal without prejudice is the proper sanction for noncompliance with the pre-suit notice requirement of Tenn. Code Ann. § 29-26-121. ***Ellithorpe v. Weismark***, 479 S.W.3d 818, 829 (Tenn. 2015) (quoting ***Foster v. Chiles***, 467 S.W.3d 911, 916 (Tenn. 2015)). However, failure to comply with the certificate of good faith requirement codified at Tenn. Code Ann § 29-26-122, results in dismissal of the complaint with prejudice. ***Id.*** Thus, if a certificate of good faith was required in this case, the proper remedy is dismissal with prejudice. Plaintiff argues that she was not required to file a certificate of good faith in this case because this is not a "health care liability action in which expert testimony is required." Tenn. Code Ann. § 29-26-122(a). Consequently, according to the plaintiff, her action should have been dismissed without prejudice.

In ***Ellithorpe***, the Supreme Court recently addressed the pre-suit notice and good faith certificate requirements imposed by the Health Care Liability Act. After providing a "brief history of the THCLA and its judicial interpretations," the ***Ellithorpe*** Court stated:

> Notably, the Tennessee Civil Justice Act of 2011 amended the existing Tennessee Medical Malpractice Act by removing all references to "medical malpractice" from the Tennessee Code and replacing them with "health care liability" or "health care liability action" as applicable. *See **id**.* Furthermore, section 29–26–101 was added to the Code which defined "health care liability action" as "any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, *regardless of the theory of liability on which the action is based*." Tenn. Code Ann. [§] 29–26–101(a)(1) (Supp. 2011) (emphasis added). This same section went on to provide that "[a]ny such civil action or claim is subject to the provisions of this part regardless of any other claims, causes of action, or

7

theories of liability alleged in the complaint." *Id.* § 29–26–101(c).

* * *

[W]e hold that section 29–26–101 establishes a clear legislative intent that *all* civil actions alleging that a covered health care provider or providers have caused an injury related to the provision of, or failure to provide health care services be subject to the pre-suit notice and certificate of good faith requirements, regardless of any other claims, causes of action, or theories of liability alleged in the complaint.

* * *

In health care liability actions, such as this one, expert proof is required to establish the recognized standard of acceptable professional practice in the profession, unless the claim falls within the "common knowledge" exception that is not applicable here. *See* Tenn. Code Ann. § 29–26–115 (2012); *Shipley v. Williams*, 350 S.W.3d 527, 537 & n. 5 (Tenn. 2011) (discussing the statutory expert proof requirements and citing *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 92 (Tenn. 1999), which discussed the "common knowledge" exception).

479 S.W.3d at 826, 827, 829 (emphasis in original).

In *Osunde v. Delta Med. Ctr.*, No. W2015-01005-COA-R9-CV, 2016 WL 537075 (Tenn. Ct. App., filed Feb. 10, 2016), this Court discussed the interplay between the THCLA and the "common knowledge" exception recognized and developed by the courts to aid in distinguishing between an action for medical malpractice and ordinary negligence during the time before the Tennessee Civil Justice Act statutorily defined "health care liability." *See Coggins v. Holston Valley Med. Ctr.*, No. E2014-00594-COA-R3-CV, 2015 WL 3657778, at *4 (Tenn. Ct. App., filed June 15, 2015) ("From 1985 until 2011, the statutory scheme alluded to actions for 'malpractice' and 'medical malpractice,' but did not statutorily define those terms.") We said in *Osunde*:

What we glean from *Ellithorpe* is the primacy of the recent statutory amendments to the THCLA, formerly known as the

8

Tennessee Medical Malpractice Act. The "nuanced" approach for distinguishing an ordinary negligence claim from a medical malpractice claim has been displaced because the statute now contains a comprehensive definition of what constitutes a "health care liability action." . . . The THCLA's definition of a "health care liability" action is conclusive[.] A claim will be subject to the THCLA if the facts of the case show that it qualifies as a "health care liability action" as that term is statutorily defined.

\* \* \*

Under the statute, a "health care provider" includes the employee of a health care provider, such as a physician, nurse, or technician, and the meaning of "health care services" includes "staffing, custodial or basic care, positioning, hydration and similar patient services." Tenn. Code Ann. § 29–26–101(a)(2), (b) (2012).

\* \* \*

Notwithstanding the general requirement that an action filed under the THCLA be supported by expert proof, it is not absolute. As our Supreme Court acknowledged in *Ellithorpe*, expert proof is not required in a health care liability action where the claim "falls within the 'common knowledge' exception." . . . [E]xpert proof may be dispensed with when the trier of fact can determine, based on common knowledge, that the direct allegations against a defendant constitute negligence. . . . Notwithstanding the differences in context in which the common knowledge language has been discussed, one salient point emerges as it concerns expert proof and the application of the "common knowledge" exception itself: expert testimony is not required where the act of alleged wrongful conduct lies within the common knowledge of a layperson. *See Baldwin v. Knight*, 569 S.W.2d 450, 456 (Tenn. 1978); *Bowman v. Henard*, 547 S.W.2d 527, 530–31 (Tenn. 1977); *Tucker v. Metro. Gov't of Nashville & Davidson Cnty.*, 686 S.W.2d 87, 92 (Tenn. Ct. App. 1984).

9

Given this understanding, a determination that a claim falls within the THCLA does not automatically trigger all of the statute's requirements. The need for expert proof will not lie if the matter is within the common knowledge of a layperson, and if there is no need for expert proof, a plaintiff's complaint will not fail for failure to attach a certificate of good faith under section 29–26–122. *See* Tenn. Code Ann. 29–26–122(a) (2012) ("In any health care liability action *in which expert testimony is required* by § 29–26–115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint.") (emphasis added). Thus, although determining that a claim constitutes a health care liability action will subject it to the pre-suit notice requirement in section 29–26–121, additional analysis is needed to determine whether expert proof is necessary. *See **Smith v. Testerman***, No. E2014–00956–COA–R9–CV, 2015 WL 1118009, at *5 (Tenn. Ct. App. Mar. 10, 2015), *perm. app. denied* (Tenn. June 15, 2015).

2016 WL 537075, at *7-9 (footnote and internal citations omitted); *see also **Estate of Bradley***, 2015 WL 9946266, at *5 ("While the requirements of Tennessee Code Annotated section 29–26–121 *always* apply to health care liability claims, section 29–26-122 applies *only* to health care liability claims requiring expert testimony. Expert testimony is not required in a HCLA claim if the negligence is obvious and readily understandable by an average layperson.") (emphasis in original; internal quotation marks and brackets in original omitted).

In the present case, plaintiff does not dispute that her complaint states a "health care liability action" falling within the broad ambit of the THCLA, because the defendants have employed and provided "health care providers" accused of negligence – specifically, certified nursing assistants working at MTMHI when the fatal assault on Mr. Newman occurred. *See* Tenn. Code Ann. § 29-26-101. Plaintiff argues that the common knowledge exception, discussed above, applies to relieve her of the general requirement to provide expert testimony and Tenn. Code Ann. § 29-26-122's good faith certificate requirement.

The question of whether a plaintiff has made claims of medical negligence that are so obvious and understandable as to be within the common knowledge of a layperson, thereby relieving a plaintiff of the expert testimony requirement, has been frequently addressed by Tennessee appellate courts. We have observed that "only the most obvious forms of [medical] negligence may be established without expert testimony." ***Ayers v.***

***Rutherford Hosp., Inc.***, 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984); *accord **Payne v. Pelmore***, No. M2004-02281-COA-R3-CV, 2006 WL 482922, at \*3 (Tenn. Ct. App., filed Feb. 28, 2006); ***Graniger v. Methodist Hosp. Healthcare Sys., Inc.***, No. 02A01-9309-CV-00201, 1994 WL 496781, at \*3 (Tenn. Ct. App., filed Sept. 9, 1994) ("The common knowledge exception applies to cases in which the medical negligence is as blatant as a 'fly floating in a bowl of buttermilk' so that all mankind knows that such things are not done absent negligence") (citing ***Murphy v. Schwartz***, 739 S.W.2d 777, 778 (Tenn. Ct. App. 1986)).

In ***Graniger***, this Court held that allegations that the defendant medical professionals "were negligent in allowing plaintiff to attempt to get down from the examination table in her impaired condition without any assistance," and "should have instructed the hospital employees under . . . supervision to assist plaintiff in her attempt to get down from the table," did not fall within the common knowledge exception. 1994 WL 496781, at \*1. In ***Murphy***, we addressed an allegation that "the failure of the doctors to provide attendants or restraints for Mrs. Murphy while she was in the emergency room . . . was medical malpractice," and rejected the argument that "it is plain and patent medical negligence to leave a stroke victim unattended or unrestrained in an emergency room, and therefore no medical affidavits are required." 739 S.W.2d at 778. In ***Tucker***, the plaintiff alleged negligent supervision, where the decedent was left unrestrained on an emergency room stretcher in a catatonic state, woke up and ran away suddenly, and was killed in an accident. We stated,

> plaintiff seems to find fault with the degree of supervision. We are of the opinion that these are matters requiring expert medical evidence and are not within the knowledge of ordinary lay persons.
>
> We do not believe it can be said that the ordinary layman possesses the knowledge concerning whether a mental patient in a catatonic state should or should not be restrained. We are of the opinion that only a medical expert is competent to testify whether the decedent should have been put in a strait jacket or locked in a room alone, or kept in an area where medical personnel were standing over him.
>
> We hold that when taken in the totality of the circumstances, the alleged negligent acts of Dr. Doyle do not fall within the common knowledge exception. *The proper treatment of a patient with serious mental problems* who had previously been hospitalized for such problems, and who is in a catatonic

> state, *is not within the common knowledge of ordinary lay persons*.

686 S.W.2d at 93-94 (emphasis added). In ***Cannon v. McKendree Village, Inc.***, 295 S.W.3d 278, 283 (Tenn. Ct. App. 2008), we held that the decision of whether to restrain a patient suffering from dementia "was one that involves a matter of medical science or art requiring skills not ordinarily possessed by lay persons," reasoning that "such a decision requires specialized knowledge regarding the mental capacity and proclivities of such a patient."

In ***Turner v. Jordan***, 957 S.W.2d 815, 816 (Tenn. 1997), the Supreme Court addressed the question of "whether a psychiatrist owed a duty of care to protect a hospital nurse from the violent and intentional acts of a hospitalized mentally ill patient." Concluding that Tennessee law imposes such a duty, the Court stated,

> The majority of courts . . . have held that where a psychiatrist, *in accordance with accepted standards of the profession*, knows or reasonably should know that a mentally ill patient poses an unreasonable risk of harm to a foreseeable third party, he or she must take reasonable steps to prevent that harm.
>
> \*      \*      \*
>
> [W]e . . . hold that a duty of care may exist where a psychiatrist, *in accordance with professional standards*, knows or reasonably should know that a patient poses an unreasonable risk of harm to a foreseeable, readily identifiable third person.

***Id.*** at 819, 820-21 (emphasis added). Although ***Turner*** did not address the common knowledge exception, it suggests that a trier of fact must be informed of "accepted standards of the profession" when determining the liability of a defendant who allegedly negligently allows a dangerous patient to harm someone else. This is a matter requiring expert testimony, clearly beyond the common knowledge of the average layperson. Similarly, the opinions cited and discussed above support the conclusion that when the issue of negligence involves "the mental capacity and proclivities of" a psychiatric patient, ***Cannon***, 295 S.W.3d at 283, expert testimony is required.

In the present case, plaintiff's allegations involve matters that are not within the common knowledge of an ordinary person – matters involving the mental and physical

12

capacities of both the attacking patient and the decedent.  As the trial court correctly noted, the question of whether and how to restrain and/or supervise a potentially dangerous mental patient involves knowledge and understanding of his diagnosis and medical history.  Plaintiff argues that the physician's orders to supervise the attacker Beazley on a "one-on-one" basis were already in place, and the alleged negligence was simply a failure to carry out those orders.  Nevertheless, we believe the issue of whether defendants' agents, all of whom are professional health care providers, were negligent under the circumstances still requires an expert to inform the trier of fact of the standard of professional care of these mental patients in a psychiatric hospital setting.  Consequently, Tenn. Code Ann § 29-26-122 requires the filing of a certificate of good faith with the complaint.  Failure to do so results in a dismissal with prejudice, as discussed above.

## V.

The judgment of the trial court is affirmed.  Costs on appeal are assessed to the appellant, Unitta Sue Newman.  The case is remanded to the trial court for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE

13